FILED

MAY 2 7 2010

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

1  RON BENDER (SBN 143364)
   JACQUELINE L. RODRIGUEZ (SBN 198838)
2  TODD M. ARNOLD (SBN 221868)
3  JOHN-PATRICK M. FRITZ (SBN 245240)
   LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
4  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
5  Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
   Email: rb@lnbrb.com; jlr@lnbrb.com; tma@lnbrb.com; jpf@lnbrb.com
6
   Proposed Attorneys for Chapter 11 Debtors
7  and Debtors in Possession

ENTERED

MAY 2 7 2010

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

8            UNITED STATES BANKRUPTCY COURT
               CENTRAL DISTRICT OF CALIFORNIA
9                  (SANTA ANA DIVISION)

10 In re:

11 WESTCLIFF MEDICAL
   LABORATORIES, INC.,
12
13           Debtor.
14
15 BIOLABS, INC.,

16           Debtor.

17
   ☒ Affects Both Debtors
18
   ☐ Affects WESTCLIFF MEDICAL
19    LABORATORIES, INC. only
20 ☐ Affects BIOLABS, INC. only
21

Lead Case No. 8:10-bk-16743-TA
Jointly Administered with Case
No. 8:10-bk-16746-TA
Chapter 11 Cases
*ORDER APPROVING*
SUBMISSION OF PROPOSED FORM OF
NOTICE OF DEBTORS' MOTION FOR AN
ORDER: (1) APPROVING SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS (EXCLUDING CASH AND ACCOUNTS
RECEIVABLE) FREE AND CLEAR OF ALL
LIENS, CLAIMS AND INTERESTS; (2)
APPROVING OF DEBTORS' ASSUMPTION AND
ASSIGNMENT OF UNEXPIRED LEASES AND
EXECUTORY CONTRACTS AND DETERMINING
CURE AMOUNTS; (3) WAIVING THE 14-DAY
STAY PERIODS SET FORTH IN BANKRUPTCY
RULES 6004(h) AND 6006(d) AND
HEARING THEREON

Court Scheduled Hearing:
Date:  May 27, 2010
Time:  11:00 a.m.
Place: Courtroom "5B"
       411 West Fourth Street
       Santa Ana, CA 92701-4593

1

1

2          Attached hereto as Exhibit "1" is the proposed form of

3     notice that the above-captioned Chapter 11 debtors and debtors in

4     possession herein intend to serve in connection with their

5     pending motion for authority to sell assets free and clear of all

6     liens, claims and interests.

7     Dated: May 27, 2010              WESTCLIFF MEDICAL LABORATORIES,
                                       INC.
8

9                                      -and-

10                                     BIOLABS, INC.

11                                     */s/ Ron Bender*
                                       RON BENDER
12                                     JACQUELINE L. RODRIGUEZ
                                       TODD M. ARNOLD
13                                     JOHN-PATRICK M. FRITZ
                                       LEVENE, NEALE, BENDER, RANKIN
14                                        & BRILL L.L.P.
                                       (Proposed) Attorneys for Chapter 11
15                                     Debtors and Debtors in Possession

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"

1  RON BENDER (SBN 143364)
   JACQUELINE L. RODRIGUEZ (SBN 198838)
2  TODD M. ARNOLD (SBN 221868)
   JOHN-PATRICK M. FRITZ (SBN 245240)
3  LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
4  Los Angeles, California 90067
5  Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
   Email: rb@lnbrb.com; jlr@lnbrb.com; tma@lnbrb.com; jpf@lnbrb.com
6
   Proposed Attorneys for Chapter 11 Debtors
7  and Debtors in Possession

8                  UNITED STATES BANKRUPTCY COURT
                   CENTRAL DISTRICT OF CALIFORNIA
9                     (SANTA ANA DIVISION)

10 In re:                          Lead Case No. 8:10-bk-16743-TA
                                   Jointly Administered with Case
11                                 No. 8:10-bk-16746-TA
   WESTCLIFF MEDICAL               Chapter 11 Cases
12 LABORATORIES, INC.,
                                   **NOTICE OF DEBTORS' MOTION FOR AN**
13          Debtor.                **ORDER: (1) APPROVING SALE OF**
                                   **SUBSTANTIALLY ALL OF THE DEBTORS'**
14 ─────────────────────          **ASSETS (EXCLUDING CASH AND ACCOUNTS**
                                   **RECEIVABLE) FREE AND CLEAR OF ALL**
15 BIOLABS, INC.,                  **LIENS, CLAIMS AND INTERESTS; (2)**
                                   **APPROVING OF DEBTORS' ASSUMPTION AND**
16          Debtor.                **ASSIGNMENT OF UNEXPIRED LEASES AND**
                                   **EXECUTORY CONTRACTS AND DETERMINING**
17 ─────────────────────          **CURE AMOUNTS; (3) WAIVING THE 14-DAY**
                                   **STAY PERIODS SET FORTH IN BANKRUPTCY**
18 ☒ Affects Both Debtors          **RULES 6004(h) AND 6006(d) AND**
                                   **HEARING THEREON**
19 ☐ Affects WESTCLIFF MEDICAL
     LABORATORIES, INC. only        Court Scheduled Hearing:
20                                  Date:  JUNE 3, 2010
   ☐ Affects BIOLABS, INC. only    Time:  2:00 PM
21                                  Place: Courtroom "5B"
                                           411 West Fourth Street
22                                         Santa Ana, CA 92701-4593
23
24
25
26
27
28

                             1

1

2    PLEASE TAKE NOTICE that a hearing will be held at the above-

3 referenced date, time and location, for the Court to consider

4 approval of a motion (the "Motion") filed by Westcliff Medical

5 Laboratories, Inc. ("Westcliff") and BioLabs, Inc. ("BioLabs"),

6 the Chapter 11 debtors and debtors in possession herein

7 (collectively, the "Debtors"), for the entry of an order of the

8 Court (A) pursuant to 11 U.S.C. § 363(f) approving the sale free

9 and clear of all liens, claims and interests to Wave Newco, Inc.

10 ("Purchaser"), a wholly-owned subsidiary of Laboratory

11 Corporation of America ("LabCorp") or to a successful overbidder

12

13 at an auction sale to be conducted by the Debtors, of

14 substantially all of the Debtors' tangible and intangible assets

15 designated for acquisition by Purchaser or the winning bidder

16 (excluding the Debtors' cash, accounts receivable, avoidance

17 causes of action and certain other excluded assets)

18 (collectively, the "Purchased Assets"); (B) pursuant to 11 U.S.C.

19 § 365, (i) authorizing the Debtors to assume executory contracts

20 and unexpired leases ("Assumed Contracts and Assumed Leases") and

21 assign them to Purchaser (or to a successful overbidder) and (ii)

22 establishing the cure amounts, if any, payable under such Assumed

23 Contracts and Assumed Leases; (C) waiving the 14-day stay periods

24 set forth in Bankruptcy Rules 6004(h) and 6006(d) to enable the

25 sale to close as quickly as possible; and (D) granting certain

26

27

28

2

other related relief, including authorizing the Debtors to enter into a Transition Agreement in connection with the sale closing.

A copy of the Asset Purchase Agreement ("APA") between the Debtors, LabCorp and Purchaser is attached as Exhibit "1" to the Declaration of Matthew Pakkala which is annexed to the Motion (the "Pakkala Declaration"). **Attached as Exhibit "2" to the Pakkala Declaration is a list of all of the Contracts that may become Assumed Contracts and Assumed Leases and the amount of money that the Debtors believe needs to be paid to other parties to the Assumed Contracts and Assumed Leases to satisfy the cure requirements of Section 365(b) of the Bankruptcy Code.** Attached as Exhibit "3" to the Pakkala Declaration is a form of Transition Agreement to be entered into in connection with the sale closing.

Westcliff is the owner and operator of approximately 170 branded and stand-alone patient service center laboratories and STAT labs located throughout California. The Debtors have approximately 1,000 employees and are currently generating approximately $100 million of annual revenue. BioLabs does not operate any business and its only material asset is its 100% equity interest in Westcliff, which is a wholly-owned subsidiary of BioLabs.

The Debtors owe approximately $56 million (the "Senior Debt") to a group of lenders (the "Senior Lenders") for whom GE Business Financial Services, Inc. acts as agent (in such

capacity, the "Senior Loan Agent"). The Senior Debt is secured by a first priority security interest and lien against all or substantially all of the Debtors' assets. Any other secured debt of the Debtors is relatively small in nature and relates to liens against only certain of the Debtors' equipment. The Debtors also have a substantial amount of unsecured debt.

The Debtors suffered a net loss of approximately $87 million in 2008 (including expenses and write offs of approximately $171 million) on net revenue of approximately $84 million. The Debtors suffered a net loss of approximately $13 million in 2009 (including expenses and write offs of approximately $110 million) on net revenue of approximately $97 million.

While the Debtors instituted as many expense reductions as were reasonably possible, the Debtors' losses continued. Since the beginning of 2009, the Debtors have been unable to make any debt service payments to the Senior Lenders, and the Debtors have been unable to remain current with their other debt obligations, including payments owing to former owners of companies the Debtors previously purchased as part of the Debtors' overall growth strategy. Indeed, the Debtors were only able to survive financially over the past approximately seventeen months because the Senior Loan Agent provided the Debtors with emergency funding to cover payroll and other vital expenses.

1    The only way the Debtors can survive as a stand alone going

2    concern business would be for the Debtors to raise many millions

3    of dollars of additional equity which is not possible given the

4    Debtors' debt structure.    It therefore became clear to the

5    Debtors in early 2009 that the only viable option available to

6    the Debtors to avoid a shut down of their business and the loss

7    of employment by all of the Debtors' employees would be for the

8    Debtors to sell their business as a going concern to the highest

9    bidder.    The Debtors have therefore been engaged in an active

10   sale process since early 2009.

11   To assist the Debtors with this sale process, the Debtors

12   engaged MTS Health Partners, LP ("MTS") in October, 2009 as a

13   financial advisor to assist the Debtors with their sale process.[1]

14   MTS, working closely with the Debtors, conducted an exhaustive

15   sale process, having prepared detailed sale materials and having

16   had extensive discussions and interactions with numerous

17   prospective buyers, both strategic buyers and financial buyers.[2]

18   After having engaged in substantial due diligence and

19   negotiations with a number of different prospective buyers over

20   the past many months, MTS and the Debtors collectively concluded

21   that LabCorp was the optimal buyer of the Debtors' assets for

22   three primary reasons.    First, LabCorp, which is in the same

---

[1] The Debtors had used other professionals for this same purpose in the past.
[2] A complete listing of the parties contacted by MTS is attached as Exhibit "5"

business as Westcliff but is a much larger company, expressed the greatest interest in purchasing the Debtors' assets. Second, it was clear that LabCorp as a strategic buyer was willing to pay a substantially higher price for the Debtors' assets than any other prospective buyer. Third, LabCorp clearly has the financial means to consummate its purchase of the Debtors' assets.[3]

As indicated in Section 3.1 of the APA, subject to certain adjustments, Purchaser has agreed to pay to the Debtors the sum of $57.5 million for the Purchased Assets, while leaving with the Debtor, among other things, all of the Debtors' accounts receivable (which the Debtors estimate will result in an additional net recovery of approximately $8,000,000 for the Debtors' estates) and all of the Debtors' cash. The Debtors and MTS believe that the purchase price offered by Purchaser is substantially higher than the purchase price that any other buyer would be willing to pay for the Purchased Assets.

While the purchase price being paid by Purchaser is subject to overbid (to insure that the highest price possible is paid for the Purchased Assets), the Debtors and MTS believe that it is highly unlikely that there is any other buyer that will be willing to pay more for the Purchased Assets than Purchaser has offered. Moreover, the Debtors and MTS do not believe that the

to the Declaration of Curtis Lane annexed to the Motion.
[3] LabCorp has established Purchaser as a wholly-owned subsidiary of LabCorp

1    prospect for a successful overbid would increase with the passage

2    of time.    To the contrary, the Debtors believe that it is

3    critical that the Debtors consummate an immediate sale of the

4    Purchased Assets because of the severe risk of a deterioration of

5    Westcliff's business resulting from the Debtors' bankruptcy

6    filings.    This is a highly sensitive and extremely competitive

7    industry, and the Debtors and Purchaser do not believe that

8    Westcliff will be able to retain its customer base for any

9    extended period of time while operating as a debtor in

10   bankruptcy.    The Debtors believe that an expedited sale of the

11   Debtors' business is necessary to avoid immediate and irreparable

12   harm to the Debtors' business, creditors and bankruptcy estates.

13        As set forth in Section 3.1 of the APA, the purchase price

14   being paid by Purchaser will be adjusted downward if there is a

15   meaningful reduction in Westcliff's post-petition business volume

16   pending the closing of the sale[4].    Moreover, should that

17   reduction reach the level of a Material Adverse Change[5],

---

solely for the purpose of acquiring the Purchased Assets.
[4] Purchase Price Decrease Adjustment is defined in the definitional Section of
the APA as the product of (a) ((Baseline Volume times 0.95) minus Measurement
Period Volume) times (b) $1,202.00.

[5] Material Adverse Change is defined in the definitional Section of the APA as
an amount equal to 0.17 or more determined using the following formula: the
quotient of (a) (the Baseline Volume minus the Measurement Period Volume);
divided by (b) the Baseline Volume.    For purposes of clarification, the
Material Adverse Change may be expressed as a percentage equal to or greater
than Seventeen Percent (17%).    By way of example, if the Baseline Volume is
9,500 and the Measurement Period Volume is 7,885, then the calculation shall
be equal to 0.17 and a Material Adverse Change shall have occurred.

1 Purchaser has the ability to walk away from this transaction

2 completely. The risks to the Debtors' estates of failing to

3 close the sale of the Purchased Assets to Purchaser on an

4 expedited basis are therefore severe. The Debtors have no doubt

5 that if they fail to consummate the sale to Purchaser, the

6 Debtors will either be forced to sell their business for

7 substantially less money than Purchaser has offered, or, worse,

8 the Debtors will have to shut down their business and liquidate,

9 which would result in the loss of approximately 1,000 jobs and

10 the decimation of any going concern value of the Debtors'

11 business. A liquidation of the Debtors' business would have

12 minimal value.

13

14 The Debtors believe that proceeding with a sale in such an

15 expedited manner serves only to the substantial benefit of the

16 Debtors' estates. Given the lengthy and exhaustive pre-petition

17 sale process that the Debtors embarked upon, with the valuable

18 assistance of MTS, the Debtors and MTS are highly confident that

19 any potential overbidder has been identified and is extremely

20 knowledgeable about the Debtors' business and the opportunity to

21 purchase the Purchased Assets. The Debtors and MTS therefore

22 believe that if there is any party willing and able to pay more

23 for the Debtors' business than Purchaser has offered, they can do

24 so within the time frame requested by the Debtors and nothing

25 would change for the better if that time frame was expanded. To

8

1 the contrary, the risk to the Debtors' business of customer

2 attrition and a corresponding reduction in the purchase price to

3 be paid by Purchaser (or worse a complete walk away by Purchaser)

4 from a protracted sale process is severe and significantly

5

6 greater than any possible benefit that could be obtained from

7 speculating that a higher price might be paid for the Purchased

8 Assets.

9 The APA was extensively negotiated between the Debtors and

10 Purchaser in good faith, arms-length negotiations, including

11 exchanges of multiple drafts of asset purchase agreements over an

12 extended period of time. The Debtors and MTS have no doubt that

13 the result obtained from the sale of the Purchased Assets to

14

15 Purchaser is the overwhelmingly optimal result for the Debtors'

16 estates.

17 The APA was extensively negotiated between the Debtors and

18 Purchaser in good faith, arms-length negotiations, including

19 exchanges of multiple drafts of asset purchase agreements over an

20 extended period of time. No insider of the Debtors has any

21 interest in or connection with the Purchaser, and no insider of

22 the Debtors will be receiving any special benefit as a result of

23 the Debtors' sale of the Purchased Assets to Purchaser. The

24 Debtors and MTS believe that the result obtained from the sale of

25 the Purchased Assets to Purchaser is the overwhelmingly optimal

26 the Purchased Assets to Purchaser is the overwhelmingly optimal

27 result for the Debtors' estates.

28

1   The Debtor will conduct an auction sale of the Purchased
2   Assets (in open court at the hearing on this Motion or prior to
3   the hearing on this Motion outside of the Court, whichever the
4   Court would prefer). After the auction, the Debtor will request
5   the Court to approve the sale of the Purchased Assets to
6   Purchaser or to a successful overbidder.
7

8       For all of these reasons and those set forth in the Motion,
9   the Debtors believe that selling the Purchased Assets to
10  Purchaser in accordance with the terms of the APA or to a
11  successful overbidder (in the event of a successful overbid made
12  at the auction) free and clear of all liens, claims, encumbrances
13  and interests ("Encumbrances") is in the overwhelming best
14  interests of the Debtors' estates.
15

16      As described in detail in a concurrently filed settlement
17  motion, Purchaser is not willing to consummate its purchase of
18  the Debtors' business unless the Debtors are able to obtain an
19  order of the Court approving a pre-bankruptcy settlement the
20  Debtors reached with various "qui tam" litigants. (See Sections
21  8.4(b) and 8.8 of the APA). The "qui tam" litigants assert
22  claims against the Debtors of more than $56 million. Absent a
23  negotiated settlement, resolution of these litigation claims
24  would have taken years, which would have made it impossible for
25  the Debtors to consummate a going concern sale of their business
26  to Purchaser. All other buyers would have required the same
27
28

closing condition because any buyer of the Debtors' business would insist on knowing that it has no monetary liability to the qui tam claimants and no ongoing reporting requirements to the State of California. It would therefore not have been possible for the Debtors to have obtained Purchaser's pre-bankruptcy agreement to the APA had the Debtors not been able to obtain a pre-bankruptcy settlement with the qui tam claimants. Court approval of that settlement agreement is therefore critically important and a condition precedent to the Closing of the Debtors' sale of the Purchased Assets to Purchaser. Pursuant to that settlement agreement, the qui tam claimants will be receiving 10% of the net sale proceeds (after a deduction for all transaction expenses).

Particularly given the expedited nature of this sale, both the Debtors and the Senior Lenders recognize that it is very important that the sale of the Purchased Assets to Purchaser inure to the benefit of all creditors. The Debtors and the Senior Lenders therefore engaged in a substantial amount of discussion in order to achieve this result.

While the Senior Lenders are owed approximately $56 million on account of the Senior Debt which is secured by a first priority security interest and lien against all or substantially all of the Debtors' assets, in order to help facilitate an expedited sale of the Debtors' business for the benefit of all

1  constituents in these cases, it is the Debtors' expectation based

2  upon numerous conversations with the Senior Lenders that the

3  Senior Lenders and the Debtors (along with any Creditors'

4  Committee which is appointed) will use their reasonable best

5  efforts to attempt to negotiate a mutually acceptable allocation

6  of the sale proceeds prior to the hearing on this Motion.

7

8      The following is a detailed description of the Debtors'

9  currently projected distributions in these cases based upon the

10 best information available to the Debtors at this time[6]:

11 $57,500,000 – gross sale proceeds

12 ($2,850,000) – estimated reduction for lease and contract cure

13 costs and set aside of funds for Equipment Lenders

14 $54,650,000 – remaining net sale proceeds

15 ($5,200,000) – payment of qui tam settlement

16 ($1,150,000) – payment of MTS remaining unpaid transaction fee

17 $48,300,000 – net remaining sale proceeds

18 $1,086,000 – estimated remaining cash at Closing[7]

19

20 $8,000,000 – estimated net collections from outstanding accounts
   receivable remaining at the Closing[8]

21

22 [6] This assumes no purchase price reduction by Purchaser.

23 [7] This figure is the Debtors' current best estimate based upon the Debtors'
   projections but this figure could be higher or lower depending upon a number
   of factors, including the Debtors' operating performance pending the Closing,

24 the timing of the Closing and any settlements with vendors (including pre-
   closing assumption of vendor contracts). This figure also does not take into

25 account the $2 million that the Debtors are required to place into a
   segregated Payroll Account for approximately 120 days pursuant to the

26 Transition Agreement with Purchaser as the Debtors expect that they will
   ultimately receive all of these funds back.

27 [8] This figure assumes a net collection equal to 63% of the book amount of the
   Debtors' accounts receivable which are projected to be approximately $12.6

28

$57,386,000 - total projected funds available for wind-down costs of the Debtors and their bankruptcy estates and distribution to pre-petition creditors

($2,900,000) - total projected wind-down costs of the Debtors[9]

$54,486,000 - total estimated funds available to be distributed to pre-petition creditors, including the Senior Lenders[10]

The Debtors' books and records show that there are eight (8) leases which were intended as security, which have an aggregate unpaid balance of approximately $522,853.67. Six (6) of these secured equipment lenders recorded UCC financing statements with the California Secretary of State purporting to perfect their security interests and liens upon their respective equipment. These eight (8) purported secured equipment lenders (collectively, the "Equipment Lenders") and the unpaid balances owed to these Equipment Lenders are summarized as follows:

| Equipment agreement | Unpaid balance |
| --- | --- |
| 1.    Liens asserted by Leasing Associates of Barrington with regard to property covered by UCC financing statement file number 20087153046125 recorded with the California Secretary of State on April 7, 2008. | $72,787.27 |
| 2.    Liens asserted by Leasing Associates of Barrington with regard to property covered by UCC financing statement file number | $62,004.97 |

---

million at the time of the Closing.

[9] This figure assumes that the bankruptcy cases will be concluded in November, 2010.

[10] As indicated above, it is the Debtors' expectation that the Senior Lenders and the Debtors (along with any Creditors' Committee which is appointed) will use their reasonable best efforts to attempt to negotiate a mutually acceptable allocation of these remaining sale proceeds prior to the hearing on this Motion.

13

| | |
|---|---|
| 20087163605844 recorded with the California Secretary of State on July 1, 2008 | |
| 3.  Liens asserted by Jules & Associates, Inc. with regard to property covered by UCC financing statement file number 20087142579518 recorded with the California Secretary of State on January 7, 2008. | $116,936.92 |
| 4.  Liens asserted by M&I Marshall & Ilsley Bank with regard to property covered by UCC financing statement file number 20067087720380 recorded with the California Secretary of State on October 10, 2006. | $41,440.30 |
| 5.  Liens asserted by Norlease, Inc. with regard to property covered by UCC financing statement file number 20067081998664 recorded with the California Secretary of State on August 18, 2006. | $128,455.89 |
| 6.  Liens asserted by Norlease, Inc. with regard to property covered by UCC financing statement file number 20067081998785 recorded with the California Secretary of State on August 18, 2006. | $99,747.30 |
| 7.  Liens asserted by Baytree Leasing (with regard to Lease No. 2953 pertaining to a Dade Behring Dimension Xpand HM Plus Analyzer) - NO UCC financing statement recorded by Baytree Leasing with respect to this property. | $116,170 |
| 8.  Liens asserted by Americorp/ACL Elite (with regard to an ACL Elite Coagulation System) - NO UCC financing statement recorded by Americorp/ACL Elite with respect to this property. | $31,900 |
| **TOTAL** | **$522,953.67** |

The Debtors are required to deliver the Purchased Assets to Purchaser free and clear of all Encumbrances, including the liens asserted by the Equipment Lenders described above.  In connection with the Motion, the Debtors are requesting that all liens of all secured creditors, including all liens of the Equipment Lenders, attach to the net proceeds to be received by the Debtors from the

14

sale of the Purchased Assets in the same validity and priority and subject to the same defenses and avoidability, if any, as before the Closing.  Additionally, upon the Closing, the Debtors will segregate and impound the total sum of $522,853.67 into a separate bank account, with the liens, claims and interests asserted by the Equipment Lenders to attach to such funds in the same validity and priority and subject to the same defenses and avoidability, if any, as before the Closing.  The Debtors reserve all of their rights and claims with respect to any liens and claims asserted by the Equipment Lenders.

Other than the liens of the Senior Lenders and those of the Equipment Lenders, all of which are being satisfied in the manner described above, the Debtors are not aware of the existence of any other Encumbrances against the Purchased Assets.  If any other Encumbrances do exist, the sale order provides for all such liens to attach to the proceeds of the sale in the same validity and priority and subject to the same defenses and avoidability, if any, as before the Closing.

**UNEXPIRED LEASES AND EXECUTORY CONRACTS TO BE ASSUMED BY THE DEBTORS AND ASSIGNED TO THE PURCHASER**

Schedule 2.4(a) to the APA lists all of the Debtors' unexpired leases and executory contracts ("Contracts") that Purchaser may elect to have the Debtors assume and assign to

15

Purchaser at or following the Closing. Purchaser will have until the Closing to designate which of such Contracts it chooses to purchase and have the Debtors assume and assign to Purchaser at the Closing ("Initial Designated Contracts"). In addition, on or before the first Business Day following the 30th calendar day after the Closing Date with respect to Leases and the 180th calendar day after the Closing Date with respect to all other Contracts, Purchaser may designate additional Contracts it chooses to purchase and have the Debtors assume and assign to Purchaser ("Subsequent Designated Contracts" and, collectively with the Initial Designated Contracts, the "Designated Contracts" and such date being referred to as the "Contract Designation Date").

In order to clarify the above among the parties, at the Closing the remaining Contracts listed on Schedule 2.4(a) of the APA will be segregated into three (3) categories scheduled as follows. First, there shall be Contracts specifically rejected in writing by Purchaser on Closing, which shall be listed as Excluded Assets on Schedule 2.2, Schedule B-1 (Excluded Contracts) or Schedule B-2 (Excluded Leases), as the case may be. Second, there shall be certain Contracts that Purchaser identifies in writing at Closing that shall be specifically assumed by the Debtors and assigned to Purchaser at Closing, which shall be set forth on Schedule 2.4(a)-1 and upon assignment

to Purchaser shall become an Assumed Contract or Assumed Lease, as the case may be; provided, that, in the event that any such Contract is listed on either Schedule 2.4(a)-2 or Schedule B-1 or Schedule B-2 as of the date of the APA, such Contract shall be treated as a Subsequent Designated Contract for purposes of Section 7.12 of the APA.  Third, there shall be certain Contracts that Purchaser shall not purchase or reject at the Closing ("Potential Subsequent Designated Contracts"), which shall be set forth on Schedule 2.4(a)-2.  The Potential Subsequent Designated Contracts shall become Subsequent Designated Contracts if Purchaser notifies the Debtors in writing before the first Business Day following the 30th calendar day after the Closing Date or the 180th calendar day after the Closing Date, as applicable, of its intent to have any such Contract(s) assigned to it.

The Designated Contracts shall be identified by (i) the name and date of the Designated Contract, (ii) the other party to the Designated Contract and (iii) the address of such party for notice purposes, all included on Schedule 2.4(a)-1.  Attached as Exhibit "2" to the Pakkala Declaration is a schedule which contains all of the foregoing information as well as a description of the amounts the Debtors believe are necessary to cure any defaults under each of the Contracts that Purchaser may elect to have the Debtors assume and assign to Purchaser at or

1  following the Closing based on the Debtors' books and records,

2  and a procedure for transferring to Purchaser the rights to any

3  security deposits with the other party to any Designated

4  Contract.

5

6      In connection with the Motion, the Debtors are requesting an

7  order of the Court providing that the cure amounts set forth in

8  Exhibit "2" to the Pakkala Declaration be the cure amounts which

9  the Debtors must pay to the other parties to the Contracts that

10  Purchaser may elect to have the Debtors assume and assign to

11  Purchaser at or following the Closing to enable the Debtors to

12  satisfy the cure requirements of Section 365(b)(1)(A) of the

13  Bankruptcy Code.   The Debtors therefore submit that any party

14  that fails to file a timely objection to the Motion should be

15  deemed to have consented to the Debtors' proposed cure amount and

16  be forever barred from challenging the Debtors' proposed cure

17  amount.

18

19     In connection with the Motion, the Debtors are requesting an

20  order of the Court providing that as of the Closing, all Initial

21  Designated Contracts shall become Assumed Contracts and Assumed

22  Leases, as the case may be, for purposes the APA, which means

23  that they will be assumed by the Debtors and assigned to

24  Purchaser effective as of the Closing.   In connection with the

25  Motion, the Debtors are also requesting an order of the Court

26  providing that as of the applicable Contract Designation Date,

27

28

all Subsequent Designated Contracts shall become Assumed Contracts and Assumed Leases, as the case may be, for purposes of the APA, which means that they will be assumed by the Debtors and assigned to Purchaser effective as of the applicable Contract Designation Date.

In connection with the Debtors' assumption and assignment to Purchaser of the Designated Contracts, Purchaser shall be deemed to have assumed any on-going liabilities and obligations in connection with all Designated Contracts, and the Debtors will be responsible for the payment of all cure costs identified on Exhibit "2" to the Pakkala Declaration.

Purchaser shall provide any other parties to any Designated Contracts who request in writing such financial information as is reasonably required to enable Purchaser to satisfy the "adequate assurance of future performance" requirements of 11 U.S.C. § 365(b)(1)(C) with respect to all Designated Contracts. Purchaser will also otherwise cooperate with the Debtors to assist the Debtors to obtain an order of the Court approving of the Debtors' assumption and assignment to Purchaser of the Designated Contracts.

Prospective overbidders at the Auction Sale will also be required to provide as part of their bid package, evidence demonstrating that they can provide adequate assurance of future performance as required by Section 365 of the Bankruptcy Code

1   with respect to any unexpired leases and executory contracts that

2   they wish to have assigned to them if they are the winning bidder

3   at the Auction.

4       In connection with the Motion, the Debtors are requesting an

5   order of the Court providing that all of the Excluded Contracts

6

7   and all of the Excluded Leases will be deemed rejected as of the

8   Closing, with the Debtors reserving the right to supplement this

9   list as the Debtors obtain additional information from Purchaser.

10      In order to facilitate the most expeditious sale closing

11  possible and to avoid immediate and irreparable harm, in the

12  Motion, the Debtors are requesting that any order approving the

13  sale of the Purchased Assets and the Debtors' assumption and

14

15  assignment of the Assumed Contracts and Assumed Leases be

16  effective immediately upon entry by providing that the fourteen-

17  day waiting periods of Bankruptcy Rule 6004(h) and 6006(d) are

18  waived, and that any delay period provided in Bankruptcy Rule

19  6003 be waived.

20      PLEASE TAKE FURTHER NOTICE that any objection to <u>any</u> of the

21  relief requested by the Debtors in the Motion must, on before ~~May~~ JUNE 

22

23  2, 2010, be filed with the Court and served by same day service

24  upon counsel to the Debtors, whose contact information is set

25  forth in the upper, left-hand corner of the first page of this

26  Notice, and counsel to Purchaser, Michael B. Lubic, Esq., K&L

27

28

1  Gates LLP, 10100 Santa Monica Blvd., 7th Floor, Los Angeles,

2  California 90067.

3      PLEASE TAKE FURTHER NOTICE that the Court may deem the

4  failure of any party in interest to file a timely objection to

5  the Motion to constitute consent to <u>all</u> of the relief requested

6  by the Debtors in the Motion.

7

8  Dated: May 27, 2010              WESTCLIFF MEDICAL LABORATORIES,
                                    INC.

9                                   -and-

10                                  BIOLABS, INC.

11
                                    /s/ Ron Bender
12                                  RON BENDER
                                    JACQUELINE L. RODRIGUEZ
13                                  TODD M. ARNOLD
                                    JOHN-PATRICK M. FRITZ
14                                  LEVENE, NEALE, BENDER, RANKIN
                                       & BRILL L.L.P.
15                                  (Proposed) Attorneys for Chapter 11
                                    Debtors and Debtors in Possession
16

17

18

19  APPROVED:

20  BUCHALTER NEMER:

21  By: Ryan L. Sent

22

23  COUNSEL TO CREDITORS COMMITTEE (PROPOSED)

24

25  Levene Neale Bender Rankin & Brill L.L.P.

26  By John Curry

27  Debtors (approval)
        MAY 27 2010                  Approval is ordered.

28                                   D. Ault,
                                     Judge U. S. Bankruptcy Ct.

                                    21

| In re:<br>WESTCLIFF MEDICAL LABORATORIES, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER Lead Case No. 8:10-bk-16743-TA<br>Jointly Administered with Case No. 8:10-bk-16746-TA |
| --- | --- |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing document described as

**SUBMISSION OF PROPOSED FORM OF NOTICE OF DEBTORS' MOTION FOR AN ORDER: (1) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS (EXCLUDING CASH AND ACCOUNTS RECEIVABLE) FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS; (2) APPROVING OF DEBTORS' ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS AND DETERMINING CURE AMOUNTS; (3) WAIVING THE 14-DAY STAY PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND 6006(d) AND HEARING THEREON**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On May 26, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Todd M Arnold    tma@lnbrb.com
- Ron Bender    rb@lnbrb.com
- Nancy S Goldenberg    nancy.goldenberg@usdoj.gov
- Michael J Heyman    michael.heyman@klgates.com
- Rodger M Landau    rlandau@lgbfirm.com, kmoss@lgbfirm.com
- Michael B Lubic    mlubic@sonnenschein.com
- Jacqueline L Rodriguez    jlr@lnbrb.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Sharon Z Weiss    sharon.weiss@hro.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On May 26, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

THE ATTACHED LISTS WERE SERVED BY U.S. MAIL.

☒ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                          **F 9013-3.1**

| In re:<br>WESTCLIFF MEDICAL LABORATORIES, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER Lead Case No. 8:10-bk-16743-TA<br>Jointly Administered with Case No. 8:10-bk-16746-<br>TA |
|---|---|

### III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on May 26, 2010, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

Via Attorney Service
The Hon. Theodor C. Albert
United States Bankruptcy Court
411 West Fourth Street
Santa Ana, CA 92701

SERVICE BY E-MAIL

Debtors
mapakkala@gmail.com; lane@mtspartners.com; Matthew.pakkala@fticonsulting.com; bewingwhalen@yahoo.com; l.contreras@westclifflabs.com;
Office of the U.S. Trustee
Frank.Cadigan@usdoj.gov; nancy.goldenberg@usdoj.gov; Terry.Biers@usdoj.gov
Debtors' Corporate Counsel
michael.dolan@kirkland.com; carl.pickerill@kirkland.com; JOsborn@kirkland.com;
Debtors' Special Healthcare Counsel
dgee@gsblaw.com
Purchaser
michael.lubic@klgates.com; Lee.Hogewood@klgates.com; john.erwin@klgates.com; grayson.hale@klgates.com; Margaret.Westbrook@klgates.com
Counsel to GE Business Financial Services, Inc.
rrogers@winston.com; jrawlins@winston.com
Counsel for MTS
brian.greer@dechert.com
20 Largest
jsavory@broe.com; briandurban@sbcglobal.net; ak@innstaff.com; Jonathan.Isaac@qlagen.com; rgregory@atlasdev.com; judy.wagner@roche.com; Javier.chagoyen@grifols.com; Michael.jones@mckesson.com; bfallon@morrisjames.com; MSchultz@Broe.com; cepstein@epsteinlegal.com
Committee/Counsel for Committee
Sharon.Weiss@hro.com; yesim.h.brisbane@siemens.com; wayne.mathias@roche.com; neal.domeyer@diasorin.com; jonathan.isaac@QIAGEN.com; jsavory@broe.com; ross.martin@ropesgray.com; bseigel@buchalter.com; jgarfinkle@buchalter.com
Qui Tam Parties:
Vincent.DiCarlo@doj.ca.gov; Steven.Picco@dhcs.ca.gov; Anne.Heard@dhcs.ca.gov; jsupple@gordonrees.com; nmccarthy@cpmlegal.com;

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 26, 2010 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

In re Westcliff Medical Laboratories
File No. 4367                                    Service by U.S. MAIL
RSN/Creditor Committee

SPECIALTY LABORATORIES
Attn: Sharon Z. Weiss
Holes Roberts & Owen LLP
800 W. Olympic Blvd., 4th Floor
Los Angeles, CA 90015-1367

SIEMENS HEALTHCARE
DIAGNOSTICS
Attn: Yesim Brisbane
P.O. Box 6101, MS 802
Newark, DE 19714-6101

ROCHE DIAGNOSTICS
CORPORATION
Attn: Wayne Mathias
9115 Hague Road
Indianapolis, IN 46250

DIASORIN INC.
Attn: Neal Domeyer
1951 Northwestern Avenue
P.O. Box 285
Stillwater, MN 55082

QIAGEN
Attn: Jonathan Isaac
1201 Clopper Road
Gaithersburg, MD 20878

IRVINE CORPORATE CENTER, LLC
Attn: Jim Savory
252 Clayton Street
Denver, CO 80206

GENZYME CORPORATION
Attn: D. Ross Martin
Ropes & Gray LLP
One International Place
Boston, MA 02110

Proposed Committee
Benjamin Seigel/Jeffrey Garfinkle
Buchalter Nemer
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457

Westcliff Medical Laboratories, Inc.
File No. 4367
Secured Creditors

Debtor
Westcliff Medical Laboratories, Inc
1821 E. Dyer Road, #100
Santa Ana, CA 92705-0000

Frank Cadigan
Nancy Goldenberg
Terry Biers
Office of the U.S. Trustee
411 West Fourth St. Suite 9041
Santa Ana, CA 92701

Bank of America, N.A.
As Successor by Merger to LaSalle
Bank N
135 South LaSalle Street
Chicago, IL 60603

Becton Dickinson & Co.
Attn: Officer/Director/Legal Dept.
1 Becton Drive
Franklin Lakes, NJ 07417

BMT Leasing, Inc.
Attn: Officer/Director/Legal Dept.
P.O. Box 692
Bryn Mawr, PA 19010

CapitalSource Finance LLC
Gregory Browne, Managing Partner
4445 Willard Avenue, Twelfth Floor
Chevy Chase, MD 20815

Cisco Systems Capital Corp.
Attn: Officer/Director/Legal Dept.
170 W. Tasman Drive, MS SJ13-3
San Jose, CA 95134

CYTYC Limited Partnership
Attn: Officer/Director/Legal Dept.
250 Campus Drive
Marlborough, MA 01752

Diasorin, Inc.
Attn: Officer/Director/Legal Dept.
1951 Northwestern Avenue
Stillwater, MN 55082

GE Business Financial Serv., Inc.
Attn: Officer/Director/Legal Dept.
2 Bethesda Metro Ctr., Suite 600
Bethesda, MD 20814

GE Capital Business Fin. Serv., Inc
Attn: Officer/Director/Legal Dept.
2 Bethesda Metro Center, Suite 600
Bethesda, MD 20814

Jules and Associates, Inc.
Attn: Officer/Director/Legal Dept.
515 S. Figueroa St., Suite 1950
Los Angeles, CA 90071

Leasing Assoc. of Barrington, Inc.
Attn: Officer/Director/Legal Dept.
33 W. Higgins Road, Suite 1030
South Barrington, IL 60010

M & I Marshall & Ilsley Bank
Attn: Officer/Director/Legal Dept.
770 N. Water Street
Milwaukee, WI 53202

Merril Lynch Capital
Attn: Officer/Director/Legal Dept.
222 North LaSalle St., 16th Fl.
Chicago, IL 60601

Merril Lynch Capital, a Division of
Merril Lynch Bus. Fin. Serv., Inc., as A
222 North LaSalle St., 16th Fl.
Chicago, IL 60601

Norlease, Inc.
Attn: Officer/Director/Legal Dept.
50 South LaSalle Street
Chicago, IL 60675

Olympus America, Inc.
Attn: Officer/Director/Legal Dept.
3500 Corporate Parkway
Center Valley, PA 18034

Phadia US Inc.
Attn: Officer/Director/Legal Dept.
4169 Commercial Ave.
Portage, MI 49002

Pitney Bowes Credit Corp.
Attn: Officer/Director/Legal Dept.
27 Waterview Drive
Shelton, CT 06484

Pitney Bowes Global Fin. Serv., Inc
Attn: Officer/Director/Legal Dept.
27 Waterview Drive
Shelton, CT 06484

Roche Diagnostics Corporation
Attn: Officer/Director/Legal Dept.
9115 Hague Road
Indianapolis, IN 46250

Sandelman Finance 2006-1, Ltd
C/O Sandelman Partners LP, Bill Brown
500 Park Avenue, 3rd Fl.
New York, NY 10022

TCF Equipment Finance, Inc.
Attn: Officer/Director/Legal Dept.
11100 Wayzata Blvd., Suite 801
Minnetonka, MN 55305

Counsel to GE Business Financial
Services, Inc.
Randy Rogers
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

BioLabs
20 Largest

BioLabs, Inc.
1821 E. Dyer Road, #100
Santa Ana, CA 92705

CapitalSource Finance LLC
Gregory Browne, Managing Partner
4445 Willard Avenue, Twelfth Floor
Chevy Chase, MD 20815

GE Business Fin. Services, Inc.
2 Bethesda Metro Ctr., Suite 600
Bethesda, MD 20814

Merril Lynch Capital
222 North LaSalle St., 16th Fl.
Chicago, IL 60601

Merril Lynch Capital, a Division of
Merril Lynch Bus. Fin. Serv., Inc.
222 North LaSalle St., 16th Fl.
Chicago, IL 60601

Sandelman Finance 2006-1, Ltd
c/o Sandelman Prtnrs., Bill Brown
500 Park Avenue, 3rd Fl.
New York, NY 10022

| In re:<br>        Wescliff Medical Laboratories, Inc.<br><br>                                                          Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 8:10-16743-TA |

## NOTE TO USERS OF THIS FORM:

**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) <u>Order Approving Submission of Proposed Form of</u>
<u>Notice of Debtors' Motion , etc.</u>
_____ was entered on the date indicated as
"Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of <u>5/27/10</u>_____, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

☑  Service information continued on attached page

**II. <u>SERVED BY THE COURT VIA U.S. MAIL:</u>** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Westcliff Medical Laboratories, Inc.
Biolabs, Inc.
1821 E. Dyer Rd., #100
Santa Ana, CA  92705

☐  Service information continued on attached page

**III. <u>TO BE SERVED BY THE LODGING PARTY:</u>** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☒  Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                    **F 9021-1.1**

| In re:<br><br>Wescliff Medical Laboratories, Inc.<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 8:10-16743-TA |
| --- | --- |

**ADDITIONAL SERVICE INFORMATION** (if needed):

Todd M Arnold    tma@lnbrb.com
Ron Bender    rb@lnbrb.com
Jeffrey K Garfinkle    bkgroup@buchalter.com, jgarfinkle@buchalter.com
Nancy S Goldenberg    nancy.goldenberg@usdoj.gov
Michael J Heyman    michael.heyman@klgates.com
Rodger M Landau    rlandau@lgbfirm.com, kmoss@lgbfirm.com
Michael B Lubic    michael.lubic@klgates.com
Jacqueline L Rodriguez    jlr@lnbrb.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Sharon Z Weiss    sharon.weiss@hro.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                    **F 9021-1.1**

In re Westcliff Medical Laboratories
File No. 4367
RSN/Creditor Committee

Service by U.S. MAIL

SPECIALTY LABORATORIES
Attn: Sharon Z. Weiss
Holes Roberts & Owen LLP
800 W. Olympic Blvd., 4th Floor
Los Angeles, CA 90015-1367

SIEMENS HEALTHCARE
DIAGNOSTICS
Attn: Yesim Brisbane
P.O. Box 6101, MS 802
Newark, DE 19714-6101

ROCHE DIAGNOSTICS
CORPORATION
Attn: Wayne Mathias
9115 Hague Road
Indianapolis, IN 46250

DIASORIN INC.
Attn: Neal Domeyer
1951 Northwestern Avenue
P.O. Box 285
Stillwater, MN 55082

QIAGEN
Attn: Jonathan Isaac
1201 Clopper Road
Gaithersburg, MD 20878

IRVINE CORPORATE CENTER, LLC
Attn: Jim Savory
252 Clayton Street
Denver, CO 80206

GENZYME CORPORATION
Attn: D. Ross Martin
Ropes & Gray LLP
One International Place
Boston, MA 02110

Proposed Committee
Benjamin Seigel/Jeffrey Garfinkle
Buchalter Nemer
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457

Westcliff Medical Laboratories, Inc.
File No. 4367
Secured Creditors

Debtor
Westcliff Medical Laboratories, Inc
1821 E. Dyer Road, #100
Santa Ana, CA 92705-0000

Frank Cadigan
Nancy Goldenberg
Terry Biers
Office of the U.S. Trustee
411 West Fourth St. Suite 9041
Santa Ana, CA 92701

Bank of America, N.A.
As Successor by Merger to LaSalle
Bank N
135 South LaSalle Street
Chicago, IL 60603

Becton Dickinson & Co.
Attn: Officer/Director/Legal Dept.
1 Becton Drive
Franklin Lakes, NJ 07417

BMT Leasing, Inc.
Attn: Officer/Director/Legal Dept.
P.O. Box 692
Bryn Mawr, PA 19010

CapitalSource Finance LLC
Gregory Browne, Managing Partner
4445 Willard Avenue, Twelfth Floor
Chevy Chase, MD 20815

Cisco Systems Capital Corp.
Attn: Officer/Director/Legal Dept.
170 W. Tasman Drive, MS SJ13-3
San Jose, CA 95134

CYTYC Limited Partnership
Attn: Officer/Director/Legal Dept.
250 Campus Drive
Marlborough, MA 01752

Diasorin, Inc.
Attn: Officer/Director/Legal Dept.
1951 Northwestern Avenue
Stillwater, MN 55082

GE Business Financial Serv., Inc.
Attn: Officer/Director/Legal Dept.
2 Bethesda Metro Ctr., Suite 600
Bethesda, MD 20814

GE Capital Business Fin. Serv., Inc
Attn: Officer/Director/Legal Dept.
2 Bethesda Metro Center, Suite 600
Bethesda, MD 20814

Jules and Associates, Inc.
Attn: Officer/Director/Legal Dept.
515 S. Figueroa St., Suite 1950
Los Angeles, CA 90071

Leasing Assoc. of Barrington, Inc.
Attn: Officer/Director/Legal Dept.
33 W. Higgins Road, Suite 1030
South Barrington, IL 60010

M & I Marshall & Ilsley Bank
Attn: Officer/Director/Legal Dept.
770 N. Water Street
Milwaukee, WI 53202

Merril Lynch Capital
Attn: Officer/Director/Legal Dept.
222 North LaSalle St., 16th Fl.
Chicago, IL 60601

Merril Lynch Capital, a Division of
Merril Lynch Bus. Fin. Serv., Inc., as A
222 North LaSalle St., 16th Fl.
Chicago, IL 60601

Norlease, Inc.
Attn: Officer/Director/Legal Dept.
50 South LaSalle Street
Chicago, IL 60675

Olympus America, Inc.
Attn: Officer/Director/Legal Dept.
3500 Corporate Parkway
Center Valley, PA 18034

Phadia US Inc.
Attn: Officer/Director/Legal Dept.
4169 Commercial Ave.
Portage, MI 49002

Pitney Bowes Credit Corp.
Attn: Officer/Director/Legal Dept.
27 Waterview Drive
Shelton, CT 06484

Pitney Bowes Global Fin. Serv., Inc
Attn: Officer/Director/Legal Dept.
27 Waterview Drive
Shelton, CT 06484

Roche Diagnostics Corporation
Attn: Officer/Director/Legal Dept.
9115 Hague Road
Indianapolis, IN 46250

Sandelman Finance 2006-1, Ltd
C/O Sandelman Partners LP, Bill Brown
500 Park Avenue, 3rd Fl.
New York, NY 10022

TCF Equipment Finance, Inc.
Attn: Officer/Director/Legal Dept.
11100 Wayzata Blvd., Suite 801
Minnetonka, MN 55305

Counsel to GE Business Financial
Services, Inc.
Randy Rogers
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

BioLabs
20 Largest

BioLabs, Inc.
1821 E. Dyer Road, #100
Santa Ana, CA 92705

CapitalSource Finance LLC
Gregory Browne, Managing Partner
4445 Willard Avenue, Twelfth Floor
Chevy Chase, MD 20815

GE Business Fin. Services, Inc.
2 Bethesda Metro Ctr., Suite 600
Bethesda, MD 20814

Merril Lynch Capital
222 North LaSalle St., 16th Fl.
Chicago, IL 60601

Merril Lynch Capital, a Division of
Merril Lynch Bus. Fin. Serv., Inc.
222 North LaSalle St., 16th Fl.
Chicago, IL 60601

Sandelman Finance 2006-1, Ltd
c/o Sandelman Prtnrs., Bill Brown
500 Park Avenue, 3rd Fl.
New York, NY 10022