1  RON BENDER (SBN 143364)
   JACQUELINE L. RODRIGUEZ (SBN 198838)
2  TODD M. ARNOLD (SBN 221868)
   JOHN-PATRICK M. FRITZ (SBN 245240)
3  LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
4  Los Angeles, California 90067
5  Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
   Email: rb@lnbrb.com; jlr@lnbrb.com; tma@lnbrb.com;
6  jpf@lnbrb.com

7
   Attorneys for Chapter 11 Debtors and Debtors in Possession
8

9                  UNITED STATES BANKRUPTCY COURT
                   CENTRAL DISTRICT OF CALIFORNIA
10                      SANTA ANA DIVISION

11 In re:                          )  Lead Case No. 8:10-bk-16743-TA
12                                 )  Jointly Administered with
   WESTCLIFF MEDICAL LABORATORIES, )  Case No. 8:10-bk-16746-TA
13 INC.,                           )  Chapter 11 Cases
                                   )
14        Debtor.                  )  **ORDER AUTHORIZING SALE OF ASSETS**
15 _____ )  **OUT OF THE ORDINARY COURSE OF**
                                   )  **BUSINESS, FREE AND CLEAR OF**
16 BIOLABS, INC.,                  )  **LIENS, ENCUMBRANCES, CLAIMS, AND**
                                   )  **INTERESTS; AUTHORIZING THE**
17        Debtor.                  )  **ASSUMPTION AND ASSIGNMENT OF**
18 _____ )  **UNEXPIRED LEASES AND EXECUTORY**
                                   )  **CONTRACTS; AND GRANTING OTHER**
19 ☒ Affects Both Debtors          )  **RELIEF PURSUANT TO 11 U.S.C.**
                                   )  **SECTIONS 105, 363 AND 365**
20 ☐ Affects WESTCLIFF MEDICAL     )
     LABORATORIES, INC. only       )  Court Scheduled Hearing:
21                                 )  Date:  June 3, 2010
22 ☐ Affects BIOLABS, INC. only    )  Time:  2:00 p.m.
                                   )  Place: Courtroom "5B"
23                                 )
                                   )
24                                 )  **Cont'd hearing date:**
                                   )  **June 9, 2010 at 10:00 a.m to go**
25 _____ )  **off calendar if order signed by**
26                                    **Judge**

27

28

RA-3004821 v3

FILED & ENTERED

JUN 09 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY ngo      DEPUTY CLERK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Court has conducted a hearing on June 3, 2010 (the "Sale

Hearing") upon the motion (the "Sale Motion") filed by BIOLABS,

INC. and WESTCLIFF MEDICAL LABORATORIES, INC., jointly

administered, Chapter 11 debtors and debtors in possession

(collectively, the "Debtors"), seeking this Court's authorization

for the Debtors to sell certain assets (the "Purchased Assets") and

to assume and assign certain unexpired leases and executory

contracts ("Assumed Contracts") to WAVE NEWCO, INC., a Delaware

corporation ("Purchaser"), a wholly-owned subsidiary of LABORATORY

CORPORATION OF AMERICA, a Delaware corporation ("LabCorp"), or the

assignee thereof, out of the ordinary course of business and free

and clear of all liens, encumbrances, claims and interests pursuant

to 11 U.S.C. §§105, 363(b) and (f), and 365, pursuant to various

provisions of Title 11 of the United States Code, 11 U.S.C. §§ 101,

et seq. (as amended, the "Bankruptcy Code"), Rules 6004, 6006, and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), and applicable local rules of this Court.  No parties

having appeared to submit competing bids for the Purchased Assets,

due and sufficient notice of the Sale Motion under the

circumstances having been given, and the Sale Hearing having been

held before this Court on June 3, 2010 at which time the Court

indicated that it would approve the relief requested in the Sale

Motion.  This Court having found good and sufficient cause

appearing to grant the relief as set forth in this Order:

    IT IS FOUND that:

1.   On May 19, 2010 (the "Petition Date"), the Debtors filed

voluntary petitions in this Court for relief under chapter 11 of

the Bankruptcy Code.  The Debtors continue to operate their

business as Debtors in Possession pursuant to sections 1107 (a) and

1108 of the Bankruptcy Code.

2.   This Court has jurisdiction over the Sale Motion pursuant to

28 U.S.C. §§ 1334 and 157.  This is a core proceeding.  Venue of

these cases and the Sale Motion in this district is proper pursuant

to 28 U.S.C. §§ 1408 and 1409.

3.   The Debtors are private companies which are the owners and

operators of stand-alone, patient service center laboratories and

STAT labs that provide various services, including clinical

testing, pathology, reporting and support services for the benefit

of thousands of out-patients throughout California.

4.   The Debtors contend that they owe approximately $56 million

(the "Senior Debt") to a group of lenders (the "Senior Lenders")

for whom GE Business Financial Services, Inc. serves as agent.  The

Debtors and the Senior Lenders contend that the Senior Debt is

secured by a first priority security interest and lien against all

or substantially all of the Debtors' assets.

5.   The Debtors contend that they suffered a net loss of

approximately $87 million in 2008 (including expenses and write

offs of approximately $171 million) on net revenue of approximately

$84 million.  The Debtors contend that they suffered a net loss of

approximately $13 million in 2009 (including expenses and write offs of approximately $110 million) on net revenue of approximately $97 million.

6.    The Debtors concluded in early 2009 that the only viable option available to the Debtors to avoid a shut down of their business and the loss of employment by all of the Debtors' employees would be for the Debtors to sell their business as a going concern to the highest bidder.  The Debtors have been engaged in an active sale process since early 2009.

7.    To assist the Debtors with this sale process, the Debtors engaged MTS Health Partners, LP ("MTS") in October, 2009 as a financial advisor to assist the Debtors with their sale process.[1] MTS, working with the Debtors, conducted a sale process, which involved the preparation of sale materials and discussions and interactions with a number of prospective buyers, both strategic buyers and financial buyers.  MTS contends that approximately twenty-five prospective buyers were contacted.

8.    After having engaged in due diligence and negotiations with a number of prospective buyers, MTS and the Debtors collectively concluded that a to be formed wholly-owned subsidiary of LabCorp was the optimal buyer of the Debtors' business for three primary reasons.  First, LabCorp, which is in the same business as the Debtors but is a much larger company, expressed the greatest interest in purchasing the Debtors' business.  Second, LabCorp was willing to pay a higher price for the Debtors' business than any

---

[1] The Debtors had used other professionals for this same purpose in the past.

4

other prospective buyer.  Third, LabCorp has the financial means to consummate its purchase of the Debtors' business.[2]

9.    The Debtors and Purchaser initially entered into a Letter of Intent for the Debtors to sell certain of their assets to Purchaser.  From and after the execution of the Letter of Intent, the parties prepared, negotiated and executed the Asset Purchase Agreement dated May 17, 2010 (the "APA").  All terms which are defined in the APA but which are not defined in this Order shall have the definitions provided for in the APA.  The parties had considered various structures for completing the transaction in a manner most beneficial to the Debtors, their creditors and Purchaser.  Ultimately, the parties concluded that the transaction could only be completed through a Bankruptcy Court approved sale utilizing the provisions of 11 U.S.C. §§ 363 and 365 to do so.  The APA was thus executed upon the condition that the Debtors would promptly seek relief in this Court and promptly seek approval of the APA and the sale procedures set forth in the APA.

10.    The approval of the sale procedures was the subject of a separate motion (the "Sale Procedures Motion") that was filed with the Court prior to the filing of the Sale Motion and pursuant to which the Court entered an order (the "Sale Procedures Order"), which provided, among other things, for an auction of the Purchased Assets and the Assumed Contracts should qualified bidders comply with the Sale Procedures Order and submit competing bids (the "Auction").

11.  A copy of the Asset Purchase Agreement between the Debtors, LabCorp and Purchaser is attached as Exhibit "3" to the Declaration of Matthew Pakkala filed in support of the Sale Procedures Motion and is attached as Exhibit "1" to the Declaration of Matthew Pakkala filed in support of the Sale Motion.

Debtor's Assets.

12.  As of the Petition Date, other than cash, accounts receivable and the other assets which are defined in the APA as the "Excluded Assets", the Debtors' assets consist primarily of those assets which are defined in Section 2.1 of the APA as the Purchased Assets.  The Debtors estimate that a liquidation of the Purchased Assets would have minimal value which is substantially less than the Aggregate Purchase Price being paid by Purchaser as set forth in Section 3.1 of the APA.

TERMS OF APA

Consideration.

13.  The APA provides that the Debtors shall sell to Purchaser the Purchased Assets and the Debtors shall assume and assign to Purchaser the Assumed Contracts.  The Debtors' cash, accounts receivable and avoidance causes of action are specifically excluded from the sale.

14.  The Aggregate Purchase Price to be paid by Purchaser is $57,500,000 payable in cash, subject to the reductions set forth in the APA.

---

[2]  LabCorp has established Purchaser as a wholly-owned subsidiary of LabCorp solely for the purpose of acquiring the Purchased Assets.

15.   The Debtors anticipate that all valid outstanding secured claims will be satisfied in full from the sale proceeds (subject to any agreed upon reductions); that all administrative expenses of the chapter 11 estates will be paid in full; and that funds will remain for distribution to priority and unsecured creditors in accordance with the priority scheme of the Bankruptcy Code.

16.   The Debtors also seek to assume and assign the Assumed Contracts to Purchaser.   The Debtors reserve the right to seek to assume and assign additional unexpired leases and executory contracts to Purchaser in the manner set forth in the APA and to reject unexpired leases and executory contracts which are not assigned to Purchaser.

Conditions of Closing.

17.   The APA generally provides that the acquisition by Purchaser will be subject to certain conditions more fully set forth in Article 8 of the APA but generally described below:

a.   Required approvals and consents;

b.   Entry by this Court of an Order authorizing the sale free and clear of Encumbrances (as defined below) on all Purchased Assets and authorizing the assumption and assignment of the Assumed Contracts and such Order shall not be stayed;

c.   Settlement of the so-called "Qui Tam" litigation;

d.   Continued accuracy of certain representations and warranties by the Debtors; and

e.   The non-occurrence of a "Material Adverse Change" (as defined in the APA).

7

Approval of Sale.

18.   The Debtors have concluded that the terms of the APA are the best terms available to the Debtors under the circumstances and that the sale to Purchaser is in the best interests of the Debtors' estates.  In reaching this conclusion, the Debtors carefully weighed a number of considerations, including the following:

a.   The Debtors undertook an intensive effort lasting more than one year to identify the optimal purchaser of their business;

b.   Purchaser was the only party which offered an acceptable proposal to the Debtors;

c.   The Debtors' business is deteriorating, and the Debtors are in immediate danger of losing to competitors both employees and their ongoing contracts, either of which would substantially impair the value of the Debtors' assets;

d.   Any further delay by the Debtors to seek alternative or higher prices for their business would pose an unacceptable risk to the Debtors' business and likely result in a further reduction in the size of the Debtors' business and thereby impair the value of the Debtors' business;

e.   The Debtors are in default under their credit facility with their Senior Lenders who are no longer willing to fund the Debtors' cash flow short falls and operating losses;

f.   The Debtors lack the cash necessary to sustain their operations on a long-term basis or to satisfy their secured debt absent consummation of the APA.  Absent a sale of their business,

the Debtors will ultimately be forced to cease their operations and liquidate their assets, with such liquidation likely producing insufficient sums to repay their Senior Debt, let alone any unsecured creditors;

g.   The Debtors have no ability to consummate a sale of their business without a settlement of the so-called "Qui Tam" litigation, and the Debtors do not believe that they have the ability to settle the "Qui Tam" litigation without consummating a sale of their business through a bankruptcy proceeding;

h.   The proposed purchase price is substantially more than the Debtors could expect to receive in a liquidation.

Other Agreements.

19.  In addition to the APA, the APA contemplates certain transition and other arrangements with respect to both executory contracts, leases and employment of some employees as follows:

a.   Contracts.  The Debtors have assembled a list of all executory contracts, unexpired leases and vendor contracts that may be assumed and assigned to Purchaser pursuant to 11 U.S.C. §365. Pursuant to Section 2.4 and corresponding schedules of the APA, Purchaser may designate contracts, leases and vendor contracts for assumption or rejection according to the timeframes provided therein (defined as the "Designated Contracts" in the APA).  As more fully detailed in Section 2.4 of the APA, Purchaser may designate certain contracts for assumption or rejection at Closing

and may reserve the right to further consider assumption of certain contracts post-Closing ("Subsequent Designated Contracts").  All contracts and leases which are ultimately assumed by the Debtors and assigned to Purchaser are defined in the APA as the "Assumed Contracts".  Adequate and proper notice has been provided to all parties of such proposed assumption or rejection under the terms of the APA and the applicable Bankruptcy Rules and local rules of this Court.

b.  Employees.  The Debtors will manage their business operations and the employment of all employees during a post-Closing period (the "Transition Period") which will be governed by the terms of a transition agreement attached as Exhibit 4.3(g) to the APA ("Transition Agreement").  Pursuant to Section 7.10 of the APA, Purchaser shall have the right (in its sole and absolute discretion), but not the obligation, to offer employment, on an at will basis, effective on the Closing Date, to any or all employees of the Debtors.  In no event shall Purchaser be obligated to hire or retain any employee of the Debtors for any period following the Closing.

The Court further CONCLUDES:

20.  The findings and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of

the foregoing findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

21.  The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations contained in this Order are (i) Sections 105(a), 363, and 365 of the Bankruptcy Code and (ii) Bankruptcy Rules 2002, 6004, 6006, and 9014.

22.  As evidenced by the proofs of service and publication filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction and the Sale Hearing have been provided in accordance with Sections 102(1), 105, 363(b), and 365 of the Bankruptcy Code and in compliance with Bankruptcy Rules 2002, 6005, 6006, 9006, 9007, 9008, and 9014, the local rules of this Court, and in compliance with the Sale Procedures Order.  The Debtors also provided due and proper notice of the assumption, sale, and assignment of each Assumed Contract to each non-debtor party under each such Assumed Contract.  Such notice was good and sufficient and appropriate under the particular circumstances.  No other or further notice of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts (including with respect to the payment by the Debtors of any cure amount due thereunder), or of the entry of this Order is necessary or shall be required.

23.  A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all persons as directed and required in the Sale Procedures Order.

24.  The Purchased Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates pursuant to 11 U.S.C. §541.

25.  The Debtors have demonstrated a sufficient basis and the existence of exigent circumstances requiring them to enter into the APA, to sell the Purchased Assets, and to assume and assign the Assumed Contracts under Sections 105(a), 363, and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.  There can be no assurance that the value of the Purchased Assets would be maintained if any delay in the consummation of the transactions contemplated in the Sale Motion and APA were to occur.  Likewise, there can be no assurance that Purchaser would be willing to complete such transactions if delay in the consummation of the transactions were to occur.  The procedures set forth in the Sale Procedures Order were non-collusive, substantively and procedurally fair to all parties, were the result of arm's-length negotiations between the Debtors and Purchaser, and were reasonable and appropriate in the context of these cases.

26.  The Debtors and Purchaser have complied, in good faith, in all respects with the Sale Procedures Order.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record

at the Sale Hearing, through marketing efforts and a sale process conducted in accordance with the Sale Procedures Order, the Debtors (a) afforded interested potential purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest and/or otherwise best offer to purchase the Purchased Assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets, (c) considered any bids submitted on or before the deadline established in the Sale Procedures Order, and (d) conducted the Auction (if any) on June 3, 2010.

27.  At the conclusion of the Auction (if any), the Debtors announced that they had determined that the offer submitted by Purchaser in the APA was the highest and/or otherwise best offer, and Purchaser is the Winning Bidder for the Purchased Assets in accordance with the Sale Procedures Order, or no bids were submitted on or before the bid deadline other than the offer submitted by Purchaser in the APA.

28.  The offer of Purchaser, on the terms and conditions set forth in the APA, including the form and total consideration to be realized by the Debtors pursuant to the APA, (i) is the highest and/or best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' estates and the creditors thereof; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Purchased Assets; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.

29.  Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and as interpreted by the decisions of this Court and higher courts regarding the meaning of 11 U.S.C. § 363(m).  The APA was negotiated and entered into in good faith, based on arm's-length bargaining, and without collusion or fraud of any kind.  The Auction was conducted in accordance with the Sale Procedures Order and in good faith within the meaning of Section 363(m) of the Bankruptcy Code.  Based on the record before this Court, neither the Debtors nor Purchaser has engaged in any conduct that would prevent the application of Section 363(m) of the Bankruptcy Code or cause the application of or implicate Section 363(n) of the Bankruptcy Code to the APA or to the consummation of the sale transaction and transfer of the Purchased Assets and Assumed Contracts to Purchaser.  Purchaser is therefore entitled to all of the protections of Section 363(m) of the Bankruptcy Code, including with respect to all of the Purchased Assets.

30.  The Debtors have full power and authority to execute the APA and all other documents contemplated thereby, and the sale of the Purchased Assets to Purchaser as contemplated by the APA has been authorized and approved by the Debtors in accordance with the requirements of state law and its internal governance requirements. Other than as may be expressly provided for in the APA, no further consents or approvals are required by the Debtors to consummate such transactions.

31.  The Debtors have advanced sound business reasons for seeking to enter into the APA and to sell the Purchased Assets and to assume and assign the Assumed Contracts, as more fully set forth in

the Sale Motion and as demonstrated at the Sale Hearing, and it is

a reasonable exercise of the Debtors' business judgment to sell the

Purchased Assets and to consummate the transactions contemplated by

the APA.  Notwithstanding any requirement for approval or consent

by any person, the transfer of the Purchased Assets to Purchaser

and the assumption and assignment of the Assumed Contracts is a

legal, valid, and effective transfer of the Debtors' right, title

and interest in the Purchased Assets and any Assumed Contracts.

32.  The terms and conditions of the APA, including the

consideration to be realized by the Debtors pursuant to the APA,

are fair and reasonable, and the transactions contemplated by the

APA are in the best interests of the Debtors' estates.

33.  Except as otherwise provided in the APA, the Purchased Assets

shall be sold free and clear of all liens, encumbrances, claims and

interests (the "Encumbrances") with the Encumbrances to attach to

the net proceeds to be received by the Debtors in the same validity

and priority and subject to the same defenses and avoidability, if

any, as before the Closing.  Purchaser would not enter into the APA

to purchase the Purchased Assets or accept an assignment of the

Assumed Contracts in the absence of the entry of this Order

providing for such sale, assumption and assignment free and clear

of all such Encumbrances.

34.  The transfer of the Purchased Assets to Purchaser will be a

legal, valid, and effective transfer of the Purchased Assets, and,

except as may otherwise be provided in the APA, shall vest

Purchaser with all right, title, and interest of the Debtors to the

Purchased Assets free and clear of any and all Encumbrances.

Except for the Assumed Liabilities as specifically provided in the APA or this Order, Purchaser shall not assume or become liable for any Encumbrances relating to the Purchased Assets being sold by the Debtors.

35.  Bankruptcy Code Section 363(f) provides for the sale of property of the estates free and clear of the Encumbrances upon the grounds stated in that subsection.

36.  The transfer of the Purchased Assets to Purchaser free and clear of all Encumbrances will not result in any undue burden or prejudice to holders of Encumbrances as all such Encumbrances shall attach to the net proceeds of the sale of the Purchased Assets received by the Debtors in the order of their priority, with the same validity, force, and effect that they now have, if any, as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto.  All persons having Encumbrances of any kind or nature whatsoever against or in the Debtors or the Purchased Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Encumbrances against Purchaser, any of its assets, property, successors or assigns, or the Purchased Assets

37.  The Debtors may sell the Purchased Assets free and clear of the Encumbrances because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied.  All objections to the Sale Motion have been resolved or withdrawn or overruled.

38.  Not selling the Purchased Assets free and clear of all Encumbrances would adversely impact the Debtors' estates, and the

sale of the Purchased Assets other than free and clear of all Encumbrances would be of substantially less value to the Debtors' estates.

39.  The Debtors and Purchaser have, to the extent necessary, satisfied the requirements of Section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), (B) and 365(f) of the Bankruptcy Code, in connection with the sale and the assumption and assignment of the Assumed Contracts.  Purchaser has demonstrated adequate assurance of future performance with respect to the Assumed Contracts pursuant to section 365(b)(1)(C) of the Bankruptcy Code. The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the APA and is in the best interests of the Debtors, their estates, creditors and other parties-in-interest thereof, and represents the exercise of sound and prudent business judgment by the Debtors.

40.  The Assumed Contracts are assignable notwithstanding any provisions contained in the Assumed Contracts to the contrary.  The Debtors have provided for the cure and/or other payments or actions required to assume and assign the Assumed Contracts to Purchaser. To the extent required, the Court will hold a continued hearing on June 9, 2010, at 10:00 a.m. in courtroom "5B" of the United States Bankruptcy Court located at 411 West Fourth Street, Santa Ana, California to resolve any disputes regarding the cure payments required to be paid to enable the Debtors to assume and assign to Purchaser the Assumed Contracts of the parties who filed objections to the Sale Motion.

41.   Purchaser will be acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in Closing the transactions contemplated by the APA at any time on or after the entry of this Order.

42.   The transactions contemplated under the APA do not amount to a consolidation, merger, or de facto merger of Purchaser and the Debtors and/or the Debtors' estates; there is not substantial continuity between Purchaser and the Debtors; there is no continuity of enterprise between the Debtors and Purchaser; Purchaser is not a mere continuation of the Debtors or their estates; and Purchaser does not constitute a successor to the Debtors or their estates.

43.   The sale of the Purchased Assets outside of a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The sale does not constitute a sub rosa chapter 11 plan.

44.   The APA, including Purchaser's bid contemplated thereunder, is a valid and proper offer and "Qualified Bid" pursuant to the Sale Procedures Order and sections 363(b) of the Bankruptcy Code.

45.   The total consideration provided under the APA by Purchaser for the Purchased Assets is the highest and/or best offer received by the Debtors, and the Aggregate Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Transfer Act, and (c) reasonably equivalent

value, fair consideration, and fair value under any other

applicable laws of the United States for the Purchased Assets.

46.   Time is of the essence in consummating the sale.   To maximize

the value of the Purchased Assets and the Assumed Contracts, it is

essential that the sale of the Purchased Assets and the assumption

and assignment of the Assumed Contracts occur within the time

constraints set forth in the APA.   Accordingly, there is cause to

lift the 14-day stays imposed by Bankruptcy Rules 6004 and 6006.

47.   Other than the Assumed Liabilities and its obligations under

the APA, Purchaser shall have no obligation with respect to any

liability of the Debtors.   In the event that Purchaser notifies

Seller in writing of its election to reject a Potential Subsequent

Designated Contract, such rejection shall be deemed to have

occurred when such notice is deemed effective under the terms of

the APA (the "Rejection Date").   Promptly upon receipt of such

notice from Purchaser, Seller shall give written notice to the

other party to such Contract that the Contract has been rejected as

of the Rejection Date.   Neither Purchaser nor Seller shall have any

liability on account of such Contract to any party for the period

subsequent to the Rejection Date.   Purchaser shall be liable to

reimburse Seller for expenses incurred under the Potential

Subsequent Designated Contracts between the Closing Date and the

Rejection Date as provided in section 7.12 of the APA.

48. Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Sale Hearing, and good and sufficient cause appearing therefore;

   IT IS HEREBY ORDERED that:

1. The Sale Motion is granted, subject to the terms and conditions set forth in this Order.

2. All objections and responses to the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing. If any such objection or response was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied. However, objections and reservations solely as to disputes regarding the cure payments required to be paid or other obligations of the Debtors to enable the Debtors to assume and assign to Purchaser the Assumed Contracts of the parties who filed objections to the Sale Motion will be determined by the Court at a hearing to be held on June 9, 2010, at 10:00 a.m., or at such further hearing as determined by the Court.

3. Notice of the Sale Hearing was fair and appropriate under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004, and 6006.

   Approval of Sale

4. The sale of the Purchased Assets, the terms and conditions of the APA (including all schedules and exhibits affixed thereto), the

bid by Purchaser and the transactions contemplated thereby are approved in all respects.

5.    The sale of the Purchased Assets and the assumption and assignment of the Assumed Contracts and the consideration provided by Purchaser under the APA is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.    Purchaser is hereby granted and is entitled to all of the protections provided to a good-faith purchaser under section 363(m) of the Bankruptcy Code, including with respect to the transfer of the Assumed Contracts as part of the sale of the Purchased Assets pursuant to section 365 of the Bankruptcy Code and this Order.

7.    The Debtors are authorized and directed to fully assume, perform under, consummate, and implement the terms of the APA together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the APA and this Order and sale of the Purchased Assets contemplated thereby including, without limitation, deeds, assignments, stock powers, and other instruments of transfer, and to take all further actions as may reasonably be requested by Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to Purchaser or reducing to possession any or all of the Purchased Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the APA, without any further corporate action or orders of this Court.  The parties

shall have no obligation to proceed with the Closing of the APA

until all conditions precedent to their respective obligations to

do so have been met, satisfied or waived.

8.    The Debtors and each other person or entity having duties or

responsibilities under the APA, any agreements related thereto or

this Order, and their respective directors, officers, employees,

members, agents, representative, and attorneys, are authorized and

empowered, subject to the terms and conditions contained in the

APA, to carry out all of the provisions of the APA and any related

agreements; to issue, execute, deliver, file, and record, as

appropriate, the documents evidencing and consummating the APA, and

any related agreements; to take any and all actions contemplated by

the APA, any related agreements or this Order; and to issue,

execute, deliver, file, and record, as appropriate, such other

contracts, instruments, releases, indentures, mortgages, deeds,

bills of sale, assignments, leases, or other agreements or

documents and to perform such other acts and execute and deliver

such other documents, as are consistent with, and necessary or

appropriate to implement, effectuate, and consummate, the APA, any

related agreements and this Order and the transactions contemplated

thereby and hereby, all without further notice to any person,

application to, or order of, the Court or further action by their

respective directors, officers, employees, members, agents,

representatives, and attorneys, and with like effect as if such

actions had been taken by unanimous action of the respective

directors, officers, employees, members, agents, representatives,

and attorneys of such entities.  The officers, directors, or any

other authorized representative of the Debtors are authorized to

certify or attest to any of the foregoing actions (but no such

certification or attestation shall be required to make any such

action valid, binding, and enforceable).  The Debtors are further

authorized and empowered to cause to be filed with the secretary of

state of any state or other applicable officials of any applicable

governmental units any and all certificates, agreements, or

amendments necessary or appropriate to effectuate the transactions

contemplated by the APA, any related agreements and this Order,

including amended and restated limited-liability-company agreements

certificates or articles of incorporation and by-laws or

certificates or articles of amendment, and all such other actions,

filings, or recordings as may be required under appropriate

provisions of the applicable laws of all applicable governmental

units or as the Debtors may determine are necessary or appropriate.

9.  Effective as of the Closing, (a) the sale of the Purchased

Assets by the Debtors to Purchaser shall constitute a legal, valid,

and effective transfer of the Debtors' right, title and interest in

the Purchased Assets notwithstanding any requirement for approval

or consent by any person, and shall vest Purchaser with all right,

title, and interest of the Debtors in and to the Purchased Assets,

free and clear of all Encumbrances of any kind, pursuant to

sections 363(f) and (b) of the Bankruptcy Code.

10.  The assumption of any Assumed Liabilities by Purchaser shall

constitute a legal, valid and effective delegation of any Assumed

Liabilities to Purchaser and shall divest the Debtors of all

liability with respect to any Assumed Liabilities, and the

assignment and assumption of the Assumed Contracts by Purchaser

shall constituted a legal, valid and effective assumption of the

Assumed Contracts by Purchaser, and shall divest the Debtors of all

liability with respect to the future performance of the Assumed

Contracts by Purchaser.

11.  The sale of the Purchased Assets is not subject to avoidance

pursuant to section 363(n) of the Bankruptcy Code.

  Transfer of Assets

12.  Except to the extent specifically provided in the APA, upon

the Closing pursuant to the APA, the Debtors are authorized,

empowered, and directed, pursuant to Sections 105(a), 363(b) and

365 of the Bankruptcy Code, to sell the Purchased Assets to

Purchaser.  The sale of the Purchased Assets shall vest Purchaser

with all right, title, and interest of the Debtors to the Purchased

Assets free and clear of any and all Encumbrances and other

liabilities and claims, whether secured or unsecured, choate or

inchoate, filed or unfiled, scheduled or unscheduled, noticed or

unnoticed, recorded or unrecorded, contingent or non-contingent,

liquidated or unliquidated, matured or unmatured, disputed or

undisputed, or known or unknown, whether arising prior to or

subsequent to the Petition Date, whether imposed by agreement,

understanding, law, equity, or otherwise, with all such

Encumbrances to attach to the proceeds of the sale with the same

priority, validity, force, and effect, if any, as they now have in

or against the Purchased Assets, subject to all claims and defenses

the Debtors may possess with respect thereto.

13. Following the date of the Closing, no holder of any Encumbrances in the Purchased Assets shall interfere with Purchaser's use and enjoyment of the Purchased Assets based on or related to such Encumbrances, or any actions that the Debtors may take in their chapter 11 cases, and no person shall take any action to prevent, interfere with, or otherwise enjoin consummation of the transactions contemplated in or by the APA or this Order.

14. The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Encumbrances, other than Assumed Liabilities, shall be self-executing, and neither the Debtors nor Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or instruments to effectuate, consummate, and implement the provisions of this Order. However, the Debtors and Purchaser, and each of their respective officers, employees, and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or Purchaser deem necessary or appropriate to implement and effectuate the terms of the APA and this Sale Order. Moreover, effective as of the Closing Date, Purchaser and its successors and assigns shall be designated and appointed the Debtors' true and lawful attorney and attorneys, with full power of substitution, in the Debtors' name and stead, on behalf and for the benefit of Purchaser, its successors and assigns, to demand and receive any and all of the Purchased Assets and to give receipts and releases for and in respect of the Purchased Assets, or any part thereof.

15. Purchaser and its successors and assigns, may from time to time as deemed appropriate institute and prosecute in the Debtors' name, for the benefit of Purchaser, its successors and assigns, matters relating to the collection or reduction to possession of any of the Purchased Assets, and to do all acts and things with respect to the Purchased Assets that Purchaser, its successor and assigns, shall deem desirable.  The foregoing powers are coupled with an interest and are irrevocable by the Debtors.

16. On or before the Closing Date, the Debtors' creditors are authorized to execute such documents and take all other actions as may be necessary to release any Encumbrances of any kind against the Purchased Assets, as such Encumbrances may have been recorded or may otherwise exist.

17. To the greatest extent available under applicable law, Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and, to the extent transferable under applicable law, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to Purchaser as of the Closing Date.

18. All of the Debtors' rights, title and interests in the Purchased Assets to be acquired by Purchaser under the APA shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in Purchaser.  Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance,

and transfer of the Purchased Assets under the APA transferring good and marketable, indefeasible title and interest in the Purchased Assets to Purchaser.

19.  Except for the Assumed Liabilities as expressly provided in the APA, Purchaser is not assuming nor shall it or any affiliate of Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Assets prior to the consummation of the transactions contempleted by the APA, or any liabilities calculable by reference to the Debtors or their operations or the Purchased Assets, or relating to continuing of other conditions existing on or prior to consummation of the transactions contemplated by the APA.

20.   Except as otherwise expressly provided in the APA, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to Purchaser on the Closing Date or at such time thereafter as Purchaser may request.

   Assumed Contracts.

21.  The provisions of the APA relating to the assumption and assignment of the Assumed Contracts are valid and binding, in full force and effect, and enforceable in accordance with their terms.

22.  Upon the Closing, or at such later time as provided in the APA, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested with all of the Debtors' right, title and interest of each of the Assumed

Contracts.  The Debtors shall cooperate with, and take all actions

reasonably requested by, Purchaser to effectuate the foregoing.

23.  Subject to the terms of the APA and the occurrence of the

Closing Date, the assumption by the Debtors of the Assumed

Contracts and the assignment of the Assumed Contracts to Purchaser,

as provided for or contemplated by the APA, is authorized and

approved pursuant to Sections 363 and 365 of the Bankruptcy Code.

24.  The Assumed Contracts shall be deemed valid and binding and in

full force and effect and assumed by the Debtors and assigned to

Purchaser at the Closing or at such later time as provided in the

APA, pursuant to sections 363 and 365 of the Bankruptcy Code,

subject only to (a) the payment of all cure and/or other payments

or actions required to assume and assign the Assumed Contracts to

Purchaser; and (b) Purchaser's right to exclude contracts and

leases from the definition of Assumed Contracts in accordance with

the terms of the APA, including the right of Purchaser to defer the

assumption and assignment of certain such contracts to a later date

pursuant to the Transition Agreement.  Purchaser shall be liable

for all obligations under such Assumed Contracts arising on and

after the Closing Date.

25.  Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy

Code, and except as otherwise provided in this Order, the Debtors

shall promptly pay or cause to be paid to the parties to any

Assumed Contracts the requisite cure amounts, if any, set forth in

the notice served by the Debtors on each of the parties to the

Assumed Contracts, except to the extent that the cure amount was

amended on the record of the Sale Hearing or otherwise ordered by the Court (the "Cure Amounts").  Objections and reservations solely as to disputes regarding the Cure Amounts of the parties who filed objections to the Sale Motion will be determined by the Court at a hearing to be held on June 9, 2010, at 10:00 a.m., or at such further hearing as determined by the Court.  In the event that Purchaser notifies Seller in writing of its election to reject a Potential Subsequent Designated Contract, such rejection shall be deemed to have occurred on the Rejection Date.  Promptly upon receipt of such notice from Purchaser, Seller shall give written notice to the other party to such Contract that the Contract has been rejected as of the Rejection Date.  Neither Purchaser nor Seller shall have any liability on account of such Contract to any party for the period subsequent to the Rejection Date.  Purchaser shall be liable to reimburse Seller for expenses incurred under the Potential Subsequent Designated Contracts between the Closing Date and the Rejection Date as provided in section 7.12 of the APA.

26. All monetary defaults under the Assumed Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Amounts.

27. Any provision in any Assumed Contract that purports to declare a breach, default, or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable.

28.  No sections or provisions of any Assumed Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Contracts as a result of the Debtors' assumption and assignment to Purchaser of the Assumed Contracts shall have any force and effect with respect to the sale transaction and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code.  No assignment of any Assumed Contract pursuant to the terms of the APA shall in any respect constitute a default under any Assumed Contract.  Purchaser shall enjoy all of the rights and benefits under each such Assumed Contract as of the applicable date of assumption without the necessity of obtaining such non-Debtor party's written consent to the assumption or assignment thereof.

29.  Purchaser has satisfied all requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the Assumed Contracts. Purchaser shall be responsible for all post-Closing liabilities and obligations under the Assumed Contracts, except as otherwise provided in the APA.

30.  The Debtors and their estates shall be relieved of any liability for any breach of any of the Assumed Contracts occurring from and after Closing, pursuant to and in accordance with section 365(k) of the Bankruptcy Code.

    Additional Provisions

31. Except to the extent expressly included in the Assumed Liabilities, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all persons and entities, including, without limitation, the Debtors, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax, and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding any Encumbrance with respect to the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' Business prior to the Closing Date or the transfer of the Purchased Assets to Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Encumbrance against Purchaser or any affiliate, successor or assign thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates and representatives (each of the foregoing in its individual capacity), or the Purchased Assets.  To avoid doubt, the foregoing shall not prevent the Debtors, their estates, successors, or permitted assigns from pursing claims, if any, against Purchaser and/or its successors and assigns in accordance with the terms of the APA, and the foregoing shall not prejudice any other rights the Debtors have under the APA.

32. Purchaser has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Liabilities as set forth in the APA, and Purchaser has not purchased any assets not defined as Purchased Assets.  Consequently, all persons, Governmental Units (as defined in sections 101(27) of the Bankruptcy Code) and all holders of Encumbrances based on or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against Purchaser (or its affiliates) or the Purchased Assets to recover any Encumbrances or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the APA.  All persons holding or asserting any Encumbrances in the Excluded Assets are hereby enjoined from asserting or prosecuting such Encumbrances or cause of action against Purchaser or the Purchased Assets for any liability associated with the Excluded Assets.

33. Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of the Debtors and/or their estates including, without limitation, any bulk-sales law, successor or vicarious liability or similar liability except as otherwise expressly provided in the APA.  Except to the extent Purchaser assumes the Assumed Liabilities pursuant to the APA, neither the purchase of the Purchased Assets by Purchaser or its affiliates or designees, nor the fact that Purchaser or its affiliates or its designees are using any of the Purchased Assets previously operated by the Debtors, will cause Purchaser or any of its affiliates or

designees to be deed a successor in any respect to the Debtors'

business.

34. Subject to the terms of the APA, the APA and any related

agreements may be waived, modified, amended, or supplemented by

agreement of the Debtors and Purchaser, without further action or

order of the Court; provided, however, that any such waiver,

modification, amendment, or supplement is not material and

substantially conforms to, and effectuates the APA and any related

agreements.

35. The failure to specifically include any particular provision

of the APA or any related agreements in this Order shall not

diminish or impair the effectiveness of such provision.  It is the

intent of the Court, the Debtors and Purchaser that the APA and any

agreement related thereto are authorized and approved in their

entirety with such amendments thereto as may be made by the parties

in accordance with this Order prior to Closing.

36. To the extent any provisions of this Order conflict with the

terms and conditions of the APA, this Order shall govern and

control.

37. Nothing in this Order shall alter or amend the APA and the

obligations of the Debtors and Purchaser under the terms of the

APA.  Any capitalized, undefined terms contained in this Order

shall have the meaning ascribed thereto in the APA.

38. This Order and the APA shall be binding on and govern the acts

of all persons and entities, including without limitation, the

Debtors and Purchaser, their respective successors and permitted

assigns, including, without limitation, any chapter 11 trustee

hereinafter appointed for the Debtors' estates or any trustee

appointed in chapter 7 cases if these cases are converted from

chapter 11, all creditors of the Debtors (whether known or

unknown), filing agents, filing officers, title agents, recording

agencies, secretaries of state, and all other persons and entities

who may be required by operation of law, the duties of their office

or contract, to accept, file, register, or otherwise record or

release any documents or instruments related to the Purchased

Assets.

39.  The provisions of this Order are non-severable and mutually

dependent.

40.  Nothing in any order of this Court or contained in any plan of

reorganization or liquidation confirmed in the chapter 11 cases, or

any order issued in any subsequent or converted cases of the

Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall

conflict with or derogate from the provisions of the APA or the

terms of this Order.

41.  Notwithstanding Bankruptcy Rules 6004, 6006, 7062, and 9021,

this Order shall be effective and enforceable immediately upon

entry and its provisions shall be self-executing.  In the absence

of any person or entity obtaining a stay pending appeal, the

Debtors and Purchaser are free to close under the APA at any time,

subject to the terms of the APA.  In the absence of any person or

entity obtaining a stay pending appeal, if the Debtors and

Purchaser close under the APA, Purchaser shall be deemed to be

acting in "good faith" and shall be entitled to the protections of

section 363(m) of the Bankruptcy Code as to all aspects of the

transactions under and pursuant to the APA if this Order or any authorization contained herein is subsequently reversed or modified on appeal.

42. The automatic stay under section 362(a) of the Bankruptcy Code shall not apply to and otherwise shall not prevent the exercise or performance by an party of its rights or obligations under the APA.

43. This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Sale Procedures Order, the APA in all respects and to decide any disputes concerning this Order, the APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the APA and this Order including, without limitation, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Purchased Assets and any Assumed Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of all Encumbrances.

44. The stays provided by Bankruptcy Rules 6004 and 6006 are hereby lifted and waived.

///

///

///

1

2  45.  The provisions of this Order and any actions taken pursuant

3  hereto shall survive entry of any order which may be entered (a)

4  appointing a Chapter 11 Trustee in either or both cases; (b)

5  converting the Chapter 11 Cases to a Chapter 7 cases; or (c)

6  dismissing the Chapter 11 Cases, and the terms and provisions of

7  this Order shall continue in full force and effect notwithstanding

8  the entry of such order or conversion or dismissal.

9                                              ###

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  DATED: June 9, 2010

25                                              _____
                                                United States Bankruptcy Judge
26

27

28

| In re:<br>WESTCLIFF MEDICAL LABORATORIES, INC., Debtor(s).<br>BIOLABS, INC.,<br>Debtor. | CHAPTER  11<br>Case No. 8:10-bk-16743<br>Jointly Administered with Case No. 8:10-bk-16746 |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067

A true and correct copy of the foregoing document described as ORDER AUTHORIZING SALE OF ASSETS OUT OF THE ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, ENCUMBRANCES, CLAIMS, AND INTERESTS; AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS; AND GRANTING OTHER RELIEF PURSUANT TO 11 U.S.C. SECTIONS 105, 363 AND 365  will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 8, 2010,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐   Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:** On **June 8, 2010,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐   Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 8, 2010,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**VIA MESSENGER SERVICE**
Hon. Theodor Albert
United States Bankruptcy Judge
United States Bankruptcy Court
Courtroom 5B
411 West Fourth Street
Santa Ana, CA 92701

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **June 8, 2010** | Jason Klassi | */s/ Jason Klassi* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                      **F 9013-3.1**

| In re:<br>WESTCLIFF MEDICAL LABORATORIES, INC., Debtor(s).<br>BIOLABS, INC.,<br>Debtor. | CHAPTER  11<br>Case No. 8:10-bk-16743<br>Jointly Administered with Case No. 8:10-bk-16746 |
|---|---|

### NOTE TO USERS OF THIS FORM:

**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3)** Category I. below:  The United States trustee and case trustee (if any) will always be in this category.
**4)** Category II. below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief.  DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled ORDER AUTHORIZING SALE OF ASSETS OUT OF THE ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, ENCUMBRANCES, CLAIMS, AND INTERESTS; AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS; AND GRANTING OTHER RELIEF PURSUANT TO 11 U.S.C. SECTIONS 105, 363 AND 365 was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.   SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **June 8, 2010**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Todd M Arnold    tma@lnbrb.com
- Richard L Barnett    rick@barnettrubin.com, rlbsec@barnettrubin.com
- Ron Bender    rb@lnbrb.com
- Jennifer Witherell Crastz    jcrastz@hemar-rousso.com
- Jeffrey K Garfinkle    bkgroup@buchalter.com, jgarfinkle@buchalter.com
- Nancy S Goldenberg    nancy.goldenberg@usdoj.gov
- Michael J Heyman    michael.heyman@klgates.com
- Andy Kong    Kong.Andy@ArentFox.com
- Rodger M Landau    rlandau@lgbfirm.com, kmoss@lgbfirm.com
- Michael B Lubic    michael.lubic@klgates.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Jacqueline L Rodriguez    jlr@lnbrb.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Sharon Z Weiss    sharon.weiss@hro.com
  ☐Service information continued on attached page

**II.SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Westcliff Medical Laboratories, Inc.
1821 E. Dyer Road, #100
Santa Ana, CA 92705

☒Service information continued on attached page

1

2    **III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or
     order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy
3    bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of
     service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile
4    transmission number(s) and/or email address(es) indicated below:

5

6
        Enterprise Rent-A-Car of Los Angeles, dba Enterprise Fleet Service
7       17210 South Main Street
        Attn: Michael Gerges
8       Gardena, CA 90248

9    Matthew.pakkala@fticonsulting.com; rrogers@winston.com; michael.lubic@klgates.com;
     jgarfinkle@buchalter.com
10

11                                                      ☐Service information continued on attached page

12   This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.
     January 2009                                                                              **F 9021-1.1**
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28