1  RON BENDER (SBN 143364)
   TODD M. ARNOLD (SBN 221868)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone:  (310) 229-1234
   Facsimile:  (310) 229-1244
5  Email: rb@lnbyb.com; tma@lnbyb.com

6  Attorneys for Chapter 11 Debtors and Debtors in Possession

7              UNITED STATES BANKRUPTCY COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                   (SANTA ANA DIVISION)

10 In re:                          Case No. 8:10-bk-16743-TA
                                   Jointly Administered with
11 WESTCLIFF MEDICAL                Case No. 8:10-bk-16746-TA
12 LABORATORIES, INC.,
                                   Chapter 11 Cases
13         Debtor.
                                   **NOTICE OF MOTION AND THIRD MOTION
14 _____         TO EXTEND DEBTORS' EXCLUSIVITY
                                   PERIODS FOR FILING PLANS OF
15 BIOLABS, INC.,                   REORGANIZATION AND OBTAINING
                                   ACCEPTANCES THEREOF; MEMORANDUM
16         Debtor.                  OF POINTS AND AUTHORITIES AND
                                   DECLARATION OF MATTHEW PAKKALA IN
17 _____         SUPPORT THEREOF**

18 ☒ Affects Both Debtors
                                   [No Hearing Required Unless
19 ☐ Affects WESTCLIFF MEDICAL      Requested Pursuant to Local
     LABORATORIES, INC. only        Bankruptcy Rule 9013-1(o)]
20 ☐ Affects BIOLABS, INC. only

21

22

23     **PLEASE TAKE NOTICE** that Westcliff Medical Laboratories, Inc.

24 and BioLabs, Inc., the Chapter 11 debtors and debtors in

25 possession herein (collectively, the "Debtors"), hereby file this

26 motion (the "Motion") for the entry of an order extending the

27 exclusivity periods for the Debtors to file plans of

28

1  reorganization and obtain acceptance thereof for ninety (90) days
2  from March 15, 2011, and May 14, 2011, respectively, through and
3  including June 13, 2011, and August 12, 2011, respectively.

4      As  discussed  in  the  annexed  memorandum  of  points  and
5  authorities (the "Memorandum") and the Declaration of Matthew
6  Pakkala (the "Pakkala Declaration") in support thereof, the
7  exclusivity periods should be extended because the Federal Trade
8  Commission (the "FTC") and LabWest, Inc. fka Wave Newco, Inc.
9  ("LabWest") are now engaged in litigation regarding LabWest's
10 acquisition of the Debtors' assets.

11     As  a  result  of  that  litigation,  certain  hold-separate
12 agreements between the FTC and LabWest, and injunctions LabWest
13 has not yet been able to make designations regarding over 100
14 leases and contracts that LabWest has the option to have the
15 Debtors assume and assign to LabWest or to reject.  Consequently,
16 the Debtors, LabWest, and the Committee have entered stipulations
17 to extend the date by which LabWest must designate open contracts
18 and personal property leases for assumption and assignment or
19 rejection to May 13, 2011.

20     Likewise, the deadline for LabWest to make designations on
21 approximately 12 real property leases has been extended to March
22 16, 2011, and landlords will have 30 days after rejection to file
23 any claims for rejection damages.

24     Until the foregoing designations are made, there is a huge
25 amount of potential rejection claims that cannot be ascertained.
26 Thus, until LabWest makes its designations, the Debtors and the
27 estates will not know the full universe of claims, assets, and

28

liabilities, and will not be in a position to prepare a meaningful disclosure statement and plan. Therefore, based on the foregoing, and for other reasons set forth in the Memorandum, the Debtors submit that "cause" exists for granting the Motion and extending the exclusivity periods for the Debtors to file a liquidation plan or plans and obtain acceptances thereof.

**PLEASE TAKE FURTHER NOTICE** that this Motion is based upon this notice (the "Notice"), the Memorandum, the Pakkala Declaration in support thereof, 11 U.S.C. § 1121(d), the entire record of these cases, and any other evidence properly presented to the Court in support of this Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Rule 9013-1(o) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California (the "Local Rules") any opposition to the Motion must be filed with the Clerk of the United States Bankruptcy Court and served upon the United States Trustee as well as counsel for the Debtors at the address located in the upper left-hand corner of the first page of this Notice and Motion by no later than fourteen (14) days after service of this Notice.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Rules 9013-1(h) and 9013-1(o), the failure to file and serve a timely response to this Motion may be deemed by the Court to be consent to the granting of the relief requested in this Motion.

1    **WHEREFORE**, the Debtors respectfully request that the Court

2  enter an order:

3      (1) extending the exclusivity periods for the Debtors to

4  file plans for ninety (90) days to and including June 13, 2011;

5      (2) extending the exclusivity periods for the Debtors to

6  obtain acceptance of plans for ninety (90) days to and including

7  August 12, 2011; and

8      (3) granting such other and further relief as the Court

9  deems just and proper.

10  Dated: March 9, 2011            WESTCLIFF MEDICAL LABORATORIES,
                                    INC.
11
                                    -and-
12
                                    BIOLABS, INC.
13
                                    */s/ Todd M. Arnold*
14                                  _____
                                    RON BENDER
15                                  TODD M. ARNOLD
                                    LEVENE, NEALE, BENDER, YOO
16                                       & BRILL L.L.P.
                                    Attorneys for Chapter 11 Debtors
17                                  and Debtors in Possession

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### RELEVANT BACKGROUND

Westcliff Medical Laboratories, Inc. and BioLabs, Inc., the Chapter 11 debtors and debtors in possession herein (collectively, the "Debtors"), commenced their bankruptcy cases by filing voluntary petitions under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") on May 19, 2010 (the "Petition Date").

The Debtors continued to operate their business until June 16, 2010 (the "Closing Date"), when the Debtors closed the sale of substantially all of their assets to LabWest, Inc. fka Wave Newco, Inc. ("LabWest") pursuant to the Order Authorizing Sale of Assets Out of the Ordinary Course of Business, Free and Clear of Liens, Encumbrances, Claims, and Interests; Authorizing the Assumption and Assignment of Unexpired Leases and Executory Contracts; and Granting Other Relief Pursuant to 11 U.S.C. Sections 105, 363, and 365 (the "Sale Order").

Around the time of the Closing Date, the Federal Trade Commission (the "FTC") began an inquiry in alleged anti-competitive activity concerning LabWest's acquisition of the Debtors' assets. In the past months, the FTC and LabWest have initiated a multitude of litigation against each other.

In particular, on November 16, 2010, LabWest commenced an adversary proceeding against the FTC alleging, inter alia, that the FTC was taking continuing actions that complicated LabWest's ability to designate the Non-Real Property Contracts.

1       On December 1, 2010, the FTC issued an administrative
2   complaint challenging the acquisition of Westcliff's assets by
3   LabWest on the grounds that it would substantially lessen
4   competition among providers of capitated clinical laboratory
5   testing services to physician groups in Southern California.

6       Also on December 1, 2010, the FTC filed in the United States
7   District Court for the District of Columbia a complaint and
8   motion for preliminary injunction seeking to enjoin Laboratory
9   Corporation of America ("LabCorp"), the parent of LabWest, from
10  integrating the Westcliff assets into the LabCorp network.  This
11  matter was subsequently transferred to the United States District
12  Court for the Central District of California, Santa Ana Division
13  (the "District Court") where it is pending as Case No. 8:10-cv-
14  01873-AG-MLG.

15      On February 22, 2011, the District Court denied the FTC's
16  motion for preliminary injunction prohibiting LabWest's
17  integration of the purchased assets.  On February 23, 2011, the
18  FTC filed its notice of appeal to the Ninth Circuit Court of
19  Appeals.

20      The FTC sought from the District Court a stay pending
21  appeal, which was denied.  The FTC subsequently sought from the
22  Ninth Circuit a stay pending appeal.  In response, the Ninth
23  Circuit has issued a temporary injunction requiring LabCorp to
24  comply with the hold separate agreement and maintain separate and
25  independent business operations of LabWest through March 18, 2011
26  to allow time for consideration of the FTC's request for a stay.

27

28

6

1      The Debtors were tenants under approximately 163 real
2  property leases as of the Petition Date.  LabWest assumed or
3  rejected approximately 116 leases as of the Closing Date.
4  Pursuant to the Sale Order and corresponding Asset Purchase
5  Agreement, the Debtors identified, inter alia, 47 unexpired real
6  property leases that LabWest, at its option, could designate for
7  assumption or rejection after the Closing Date.  LabWest has
8  designated 35 of these 47 leases to either be rejected or to be
9  assumed by the Debtors and assigned to LabWest.  For the
10  remaining 12 leases (the "Leases"), however, LabWest requested
11  that the Debtors extend the time that LabWest may designate the
12  Leases to either be rejected or assumed by the Debtors an
13  assigned to LabWest.  The Debtors agreed to seek to extend the
14  time as requested.  On September 15, 2010, the Court entered an
15  order approving such request and extending the time for LabWest
16  to assume or reject the Leases to December 15, 2010.  Threafter,
17  due to the pending FTC litigation and based on agreements from
18  affected landlords, the Court approved a further extension to and
19  including March 16, 2011 for LabWest designate the open Leases
20  for assumption and assignment or rejection.  There are now only 2
21  open Leases.  Landlords will have 30 days after any rejections to
22  assert lease rejection claims.

23      In addition, as a result of the FTC litigation, certain
24  hold-separate agreements between the FTC and LabWest, and
25  injunctions, LabWest has not yet been able to make designations
26  regarding the Leases and over 100 other contracts and non-real
27  property leases.  As a result, on December 10, 2010, the Debtors,
28

7

1 | LabWest, and the Committee signed a stipulation to extend the
2 | deadline for LabWest to designate contracts and non-real property
3 | leases from December 14, 2010 to March 14, 2011. That
4 | stipulation was approved by the Court. The Debtors, LabWest, and
5 | the Committee recently filed a stipulation to further extend the
6 | deadline for LabWest to designate contracts and non-real property
7 | leases from March 14, 2011 to and including May 13, 2011. A
8 | motion is pending before the Court for approval of this
9 | stipulation. Until final designations are made, there is a huge
10 | amount of potential rejection claims that cannot be ascertained.

11 | The Debtors intend to file a plan or plans jointly with the
12 | Committee. The Debtors want to make the information in any
13 | disclosure statement(s) describing any plan(s) as accurate as
14 | possible. Since information regarding assets and liabilities
15 | will be the most material information contained in the disclosure
16 | statement(s), the Debtors prefer to delay the preparation
17 | disclosure statement(s) and plan(s) for a short period of time so
18 | that the Debtors and the Committee can develop more accurate
19 | information on these quintessential disclosures.

20 | Throughout the course of these bankruptcy cases, the Debtors
21 | have remained current on their administrative and reporting
22 | requirements. The Debtors timely filed their schedules and
23 | statements of financial affairs, attended and completed their
24 | meeting of creditors under 11 U.S.C. § 341, have submitted
25 | monthly operating reports to the Office of the United States
26 | Trustee (the "UST"), and paid quarterly fees as required.

27

28

1    This is the Debtors' third request for an extension of the
2  exclusivity periods for the Debtors to file plans of
3  reorganization and obtain acceptance thereof.  The Debtors made
4  their first request on or about September 16, 2010, requesting a
5  90 day extension of the periods to December 15, 2010, for filing
6  a plan, and to February 13, 2011, for obtaining acceptance of a
7  plan.  The Debtors made their second request on or about December
8  15, 2010, requesting a 90 day extension of the periods to March
9  15, 2011, for filing a plan, and to May 14, 2011, for obtaining
10  acceptance of a plan.

                                II.
11

12                          **DISCUSSION**

13  A.   The Court Has Authority To Extend the Debtors' Exclusivity
         Periods for the Filing of Plans and Obtaining Acceptance
14       Thereof.

15       Pursuant to Sections 1121(b) and (c)  of the Bankruptcy

16  Code, a Chapter 11 debtor has the exclusive right to file a plan

17  of reorganization for a period of 120 days following the filing
18
    of the petition and an additional 60 days thereafter to obtain
19
    acceptances to any plan so filed.  11 U.S.C. §§ 1121(b) & (c).
20

21       Section 1121(d) of the Bankruptcy Code allows the Court to

22  extend or reduce these time periods "for cause."  Section 1121(d)

23  of the Bankruptcy Code provides, in pertinent part, as follows:

24                (d)(1) Subject to paragraph (2), on request
                  of a party in interest made within the
25                respective periods specified in subsections
                  (b) and (c) of this section and after notice
26                and a hearing, the court may for cause reduce
                  or increase the 120-day period or the 180-day
27                period referred to in this section.
28

                                 9

           (2)(A)   The 120-day period specified in
    paragraph (1) may not be extended beyond a
    date that is 18 months after the date of the
    order for relief under this chapter.
           (B)   The 180-day period specified in
    paragraph (1) may not be extended beyond a
    date that is 20 months after the date of the
    order for relief under this chapter.

11 U.S.C. § 1121(d)(1) & (2).

    The decision of whether to grant a request to extend or
shorten the exclusivity periods lies within the sound discretion
of the bankruptcy judge.   In re Gibson & Cushman Dredging Corp.,
101 B.R. 405, 409 (E.D.N.Y. 1989).   The "cause" standard referred
to in Section 1121 has been referred to as a general standard
that allows the bankruptcy court "maximum flexibility to suit
various types of reorganization proceedings."   In re Public
Service Company of New Hampshire, 88 B.R. 521, 534 (Bankr. D.N.H.
1988).

    It is common for courts to grant more than one extension of
the exclusive periods to file and gain acceptance of chapter 11
plans.   See, e.g., Gaines v. Perkins (In re Perkins), 71 B.R. 294
(W.D. Tenn. 1987) (affirming bankruptcy court's approval of
multiple extensions); In re Express One Int'l, Inc., 194 B.R. 98
(Bankr. E.D. Tex. 1996) (granting multiple extensions); In re
Pine Run Trust, Inc., 67 B.R. 432 (Bankr. E.D. Pa. 1986)
(granting second exclusivity); see also Williamette Water Front,
Ltd. v. Victoria Station, Inc. (In re Victoria Station, Inc.), 88
B.R. 231 (9th Cir. BAP 1988) (in allowing multiple extensions of
time to assume or reject unexpired nonresidential leases pursuant
to section 365(d)(4), the BAP noted that the allowance of such

1  multiple extensions is supported by, among other things, other
2  courts' allowance of multiple extensions of exclusivity
3  periods)(citations omitted), aff'd, 875 F. 2d 1380 (9th Cir.
4  1989).

5      Among the factors to be considered in finding "cause" to
6  extend the exclusivity periods are: (i) the size and complexity
7  of the case (Grand Traverse Devel. Co. Ltd. Partnership, 147 B.R.
8  418, 420 (Bankr. W.D. Mich. 1992)); (ii) whether a debtor is
9  attempting in good faith to formulate a viable plan and the
10 degree of progress that has been achieved by the debtor in the
11 Chapter 11 process (In re Jasick, 727 F.2d 1379 (5th Cir. 1984),
12 reh'g denied, 731 F.2d 888 (5th Cir.)); and (iii) a debtor's
13 satisfaction of its post-petition obligations as they come due
14 (In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y.
15 1987)).   While the foregoing are some of the most common factors,
16 a court has discretion to consider others.   See, e.g., Express
17 One, 194 B.R. at 100.   For example, the diligence of management
18 and proper administration of the case is a factor that weighs in
19 favor of an extension of the plan exclusivity periods.   See, In
20 re United Press International, 60 B.R. 265 (Bankr. D.D.C. 1986);
21 In re Trainer's, Inc., 17 B.R. 246, 247 (Bankr. E.D. Pa. 1982).

22 B.  Good Cause Exists to Grant the Debtors' Request to Extend
        the Exclusivity Periods for the Debtors to File Plans of
23      Reorganization and Obtain Acceptance Thereof.

24     1.  Size and Complexity of the Cases

25
       The Debtors' cases are complex.   The Debtors sold
26
   substantially all of their assets to LabWest in June 2010
27
   pursuant to an extensive, voluminous, and detailed asset purchase
28

1    agreement.    Pursuant  to  the  terms  of  that  asset  purchase

2    agreement, the transition process associated with the Sale is not

3    complete and will not be completed until at least May 2011 due to

4    complications with the FTC and assumption or rejection of certain

5
6    leases and contracts.  As LabWest continues to decide whether to

7    assume  or  reject  leases  and  contracts  in  connection  with  the

8    Sale, the Debtors' liabilities continue to change.   Until these

9    issues are resolved, the Debtors cannot properly evaluate their

10   liabilities  and  propose  a  meaningful  disclosure  statement  and

11   liquidating plan.  As a result, the case-complexity factor weighs

12   in favor of extending the Debtors' plan exclusivity periods.

13
14          2.    Efforts to Formulate and Confirm a Viable Plan or Plans
                 of Reorganization

15        For the first four months of these cases, the Debtors had to

16   devote almost all of their time and efforts to completing the

17   Sale by transitioning operations to LabWest.   This involved

18   continuous evaluation and reevaluation of leases and contracts

19   for assumption and assignment or rejection, personnel issues, and

20   ongoing  business  issues  with  various  vendors,  clients,  and

21   insurance providers, amongst other things.  The FTC investigation

22   and litigation has complicated the transition process, leaving

23   several issues on lease and contract assumption or rejection

24   unresolved.   Until these issues and solutions to these issues

25   solidify, a large portion of the Debtors' liabilities will remain

26   unknown.   Consequently, the Debtors are not in a position to

27   propose a meaningful plan and disclosure statement while such

28

1  material information remains uncertain.  As a result, this factor
2  weighs in favor of extending the Debtors' plan exclusivity
3  periods.

4       3.   Post-petition Obligations

5       The Debtors are current with their post-petition obligations
6  to creditors.   Therefore, this factor weighs in favor of
7  extending the Debtors' plan exclusivity periods.

8       4.   Diligence of Management and Proper Administration of
9            These Cases

10  As discussed above, the Debtors have properly administered
11 their Chapter 11 cases in that the Debtors have complied with all
12 of the material requirements of the Bankruptcy Code, the Federal
13 Rules of Bankruptcy Procedure, and the UST.  The Debtors timely
14 filed their schedules and statements of financial affairs,
15 attended and completed their meeting of creditors under 11 U.S.C.
16 §341, have submitted monthly operating reports to the UST, and
17 paid quarterly fees as required.  Under these circumstances, an
18 extension of the exclusivity periods for filing and obtaining
19 confirmation of a plan or plans of reorganization can be granted
20 with the confidence that the Debtors are in full compliance with
21 the requirements that are a condition to the Debtors maintaining
22 their exclusive right to file plans of reorganization and gain
23 acceptance thereof.  As a result, this factor weighs in favor of
24 extending the Debtors' plan exclusivity periods.

25       5.   Prior Requests to Extend Exclusivity Periods

26       This is the Debtors' third request to extend their plan
27 exclusivity periods under 11 U.S.C. § 1121, and the requested
28 extension is within the limits set forth in 11 U.S.C. §

1 | 1121(d)(2).   Courts commonly grant multiple extensions of the
2 | exclusivity periods.   Therefore, this factor weighs in favor of
3 | extending the Debtors' plan exclusivity periods.

4 |       6.   The Purpose Behind the Debtors' Request

5 |      The Debtors' request herein is being made in good faith and
6 | not for the purpose of pressuring creditors into acceding to
7 | certain plan terms.   On the contrary, the Debtors' goal is to
8 | maximize distributions to all creditors pursuant to a liquidation
9 | plan or plans after completing the transition process associated
10 | with the Sale and to make such distributions as soon as possible.
11 | However, given all that the Debtors have been required to address
12 | in their cases thus far, the Debtors' liabilities are not yet
13 | fully known, and the FTC involvement has delayed the anticipated
14 | timeline of the cases, the Debtors cannot evaluate and formulate
15 | a liquidation plan at this time.   The Debtors are not aware of
16 | any creditor whose claim or interest would be adversely affected
17 | or impaired by the granting of the relief requested herein.
18 | Therefore, this factor weighs in favor of extending the Debtors'
19 | plan exclusivity periods.

20 |      Thus, based on all of the foregoing, the Debtors submit that
21 | good cause exists for granting the relief requested in the
22 | Motion.

23 | ///
24 | ///

14

### III.

### CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter an order:

(1) extending the exclusivity periods for the Debtors to file plans for ninety (90) days to and including June 13, 2011;

(2) extending the exclusivity periods for the Debtors to obtain acceptance of plans for ninety (90) days to and including August 12, 2011; and

(3) granting such other and further relief as the Court deems just and proper.

Dated: March 9, 2011          WESTCLIFF MEDICAL LABORATORIES, INC.

                              -and-

                              BIOLABS, INC.

                              /s/ Todd M. Arnold
                              RON BENDER
                              TODD M. ARNOLD
                              LEVENE, NEALE, BENDER, YOO
                                & BRILL L.L.P.
                              Attorneys for Chapter 11 Debtors
                              and Debtors in Possession

1

## DECLARATION OF MATTHEW PAKKALA

2

I, MATTHEW PAKKALA, HEREBY DECLARE AS FOLLOWS:

3      1.   I have personal knowledge of the facts set forth below
4  and, if called to testify, would and could competently testify
5  thereto.

6      2.   I am a Managing Director of FTI Consulting, Inc.
7  ("FTI"), which maintains its main offices at 500 E. Pratt
8  Street, Suite 1400, Baltimore, MD 21202.  My business office is
9  located at 633 West 5th Street, 16th Floor, Los Angeles,
10  California, 90071.

11     3.   I hold a B.A. from the University of California, San
12  Diego, a J.D. from Loyola Law School, and an M.B.A. from the
13  Anderson School of Business at UCLA.  I have more than 13 years
14  of restructuring and related advisory and management experience.
15  My work focuses on advising distressed and underperforming
16  companies on restructuring alternatives and strategies for
17  maximizing performance and value, and my expertise includes
18  providing financial and operational restructuring, asset sales
19  and expert witness services in the healthcare, retail,
20  manufacturing and airline industries.  Prior to joining FTI, I
21  worked in the restructuring groups of PricewaterhouseCoopers and
22  Price Waterhouse in Los Angeles.

23     4.   Effective on or about April 1, 2010, I became the
24  Chief Restructuring Officer ("CRO") for Westcliff Medical
25  Laboratories, Inc. and its parent corporation, BioLabs, Inc.,
26  Chapter 11 Debtors and Debtors in Possession (collectively, the
27  "Debtors").

28

5.    The Debtors commenced their bankruptcy cases by filing voluntary petitions under Chapter 11 of 11 U.S.C. § 101 et seq. on May 19, 2010 (the "Petition Date").

6.    The Debtors continued to operate their business until June 16, 2010 (the "Closing Date"), when the Debtors closed the sale of substantially all of their operating assets to LabWest, Inc. fka Wave Newco, Inc. ("LabWest") pursuant to the Order Authorizing Sale of Assets Out of the Ordinary Course of Business, Free and Clear of Liens, Encumbrances, Claims, and Interests; Authorizing the Assumption and Assignment of Unexpired Leases and Executory Contracts; and Granting Other Relief Pursuant to 11 U.S.C. Sections 105, 363, and 365 (the "Sale Order").

7.    Around the time of the Closing Date, the Federal Trade Commission (the "FTC") began an inquiry in alleged anti-competitive activity concerning LabWest's acquisition of the Debtors' assets. In the past few months, the FTC and LabWest have initiated a multitude of litigation against each other.

8.    In particular, I am informed and believe that, on November 16, 2010, LabWest commenced an adversary proceeding against the FTC alleging, inter alia, that the FTC was taking continuing actions that complicated LabWest's ability to designate the Non-Real Property Contracts.

9.    I am informed and believe that, on December 1, 2010, the FTC issued an administrative complaint challenging the acquisition of Westcliff's assets by LabWest on the grounds that it would substantially lessen competition among providers of

1  capitated clinical laboratory testing services to physician

2  groups in Southern California.

3       10.  I am informed and believe that, also on December 1,

4  2010, the FTC filed in the United States District Court for the

5  District of Columbia a complaint and motion for preliminary

6  injunction seeking to enjoin Laboratory Corporation of America

7  ("LabCorp"), the parent of LabWest, from integrating the

8  Westcliff assets into the LabCorp network.  I am informed and

9  believe that, this matter was subsequently transferred to the

10 United States District Court for the Central District of

11 California, Santa Ana Division (the "District Court") where it

12 is pending as Case No. 8:10-cv-01873-AG-MLG.

13      11.  I am informed and believe that, on February 22, 2011,

14 the District Court denied the FTC's motion for preliminary

15 injunction prohibiting LabWest's integration of the purchased

16 assets.  I am informed and believe that, on February 23, 2011,

17 the FTC filed its notice of appeal to the Ninth Circuit Court of

18 Appeals.

19      12.  I am informed and believe that, the FTC sought from

20 the District Court a stay pending appeal, which was denied.  I

21 am informed and believe that, the FTC subsequently sought from

22 the Ninth Circuit a stay pending appeal.  I am informed and

23 believe that, in response, the Ninth Circuit has issued a

24 temporary injunction requiring LabCorp to comply with the hold

25 separate agreement and maintain separate and independent

26 business operations of LabWest through March 18, 2011 to allow

27 time for consideration of the FTC's request for a stay.

28

Case 8:10-bk-16743-TA   Doc 375   Filed 03/10/11   Entered 03/10/11 17:33:44   Desc
Main Document    Page 19 of 25

13.   The Debtors were tenants under approximately 163 real property leases as of the Petition Date.  LabWest assumed or rejected approximately 116 leases as of the Closing Date. Pursuant to the Sale Order and corresponding Asset Purchase Agreement, the Debtors identified, inter alia, 47 unexpired real property leases that LabWest, at its option, could designate for assumption or rejection after the Closing Date.  LabWest has designated 35 of these 47 leases to either be rejected or to be assumed by the Debtors and assigned to LabWest.  For the remaining 12 leases (the "Leases"), however, LabWest requested that the Debtors extend the time that LabWest may designate the Leases to either be rejected or assumed by the Debtors  an assigned to LabWest.  The Debtors agreed to seek to extend the time as requested.  On September 15, 2010, the Court entered an order approving such request and extending the time for LabWest to assume or reject the Leases to December 15, 2010.  Threafter, due to the pending FTC litigation and based on agreements from affected landlords, the Court approved a further extension to and including March 16, 2011 for LabWest designate the open Leases for assumption and assignment or rejection.  There are now only 2 open Leases.  Landlords will have 30 days after any rejections to assert lease rejection claims.

14.   In addition, as a result of the FTC litigation, certain hold-separate agreements between the FTC and LabWest, and injunctions, LabWest has not yet been able to make designations regarding the Leases and over 100 other contracts and non-real property leases.  As a result, on December 10,

1  2010, the Debtors, LabWest, and the Committee signed a
2  stipulation to extend the deadline for LabWest to designate
3  contracts and non-real property leases from December 14, 2010 to
4  March 14, 2011. That stipulation was approved by the Court.
5  The Debtors, LabWest, and the Committee recently filed a
6  stipulation to further extend the deadline for LabWest to
7  designate contracts and non-real property leases from March 14,
8  2011 to and including May 13, 2011. A motion is pending before
9  the Court for approval of this stipulation. Until final
10 designations are made, there is a huge amount of potential
11 rejection claims that cannot be ascertained.

12     15. The Debtors intend to file a plan or plans jointly
13 with the Committee. The Debtors want to make the information in
14 any disclosure statement(s) describing any plan(s) as accurate
15 as possible. Since information regarding assets and liabilities
16 will be the most material information contained in the
17 disclosure statement(s), the Debtors prefer to delay the
18 preparation disclosure statement(s) and plan(s) for a short
19 period of time so that the Debtors and the Committee can develop
20 more accurate information on these quintessential disclosures.

21     16. Throughout the course of these bankruptcy cases, the
22 Debtors have remained current on their administrative and
23 reporting requirements. The Debtors timely filed their
24 schedules and statements of financial affairs, attended and
25 completed their meeting of creditors under 11 U.S.C. § 341, have
26 submitted monthly operating reports to the Office of the United
27 States Trustee (the "UST"), and paid quarterly fees as required.

28

17. This is the Debtors' third request for an extension of the exclusivity periods for the Debtors to file plans of reorganization and obtain acceptance thereof. The Debtors made their first request on or about September 16, 2010, requesting a 90 day extension of the periods to December 15, 2010, for filing a plan, and to February 13, 2011, for obtaining acceptance of a plan. The Debtors made their second request on or about December 15, 2010, requesting a 90 day extension of the periods to March 15, 2011, for filing a plan, and to May 14, 2011, for obtaining acceptance of a plan.

18. For the first four months of these cases, the Debtors had to devote almost all of their time and efforts to completing the Sale by transitioning operations to LabWest. This involved continuous evaluation and reevaluation of leases and contracts for assumption and assignment or rejection, personnel issues, and ongoing business issues with various vendors, clients, and insurance providers, amongst other things. The FTC investigation and litigation has complicated the transition process, leaving several issues on lease and contract assumption or rejection unresolved. Until these issues and solutions to these issues solidify, a large portion of the Debtors' liabilities will remain unknown. Consequently, the Debtors are not in a position to propose a meaningful plan and disclosure statement while such material information remains uncertain.

19. To the best of my knowledge, the Debtors are current with their post-petition obligations to creditors.

1     20.  The Debtors' request herein is being made in good
2    faith and not for the purpose of pressuring creditors into
3    acceding to certain plan terms.  On the contrary, the Debtors'
4    goal is to maximize distributions to all creditors pursuant to a
5    liquidation plan or plans after completing the transition
6    process associated with the Sale and to make such distributions
7    as soon as possible.  However, given all that the Debtors have
8    been required to address in their cases thus far, the Debtors'
9    liabilities are not yet fully known, and the FTC involvement has
10   delayed the anticipated timeline of the cases, the Debtors
11   cannot evaluate and formulate a liquidation plan at this time.
12   The Debtors are not aware of any creditor whose claim or
13   interest would be adversely affected or impaired by the granting
14   of the relief requested herein.

15       I declare and verify under penalty of perjury that the
16   foregoing is true and correct to the best of my knowledge,
17   information and belief.

18       Executed on this 9th day of March 2011, at Los Angeles,
19   California.

21                           MATTHEW PAKKALA, DECLARANT

22

23

24

25

26

27

28

22

| In re:<br>WESTCLIFF MEDICAL LABORATORIES, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER Lead Case No. 8:10-bk-16743-TA<br>Jointly Administered with Case No. 8:10-bk-16746-TA |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing document described as **NOTICE OF MOTION AND THIRD MOTION TO EXTEND DEBTORS' EXCLUSIVITY PERIODS FOR FILING PLANS OF REORGANIZATION AND OBTAINING ACCEPTANCES THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF MATTHEW PAKKALA IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u> – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 10, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Raymond G Alvarado    ralvarado@adorno.com
- Todd M Arnold    tma@lnbrb.com
- Richard L Barnett    rick@barnettrubin.com, rlbsec@barnettrubin.com
- Ron Bender    rb@lnbrb.com
- Ronald K Brown    rkbgwhw@aol.com
- Jennifer Witherell Crastz    jcrastz@hemar-rousso.com
- Carol J Fogleman    mfrost@bwslaw.com
- Anthony A Friedman    aaf@lnbrb.com
- John-patrick M Fritz    jpf@lnbrb.com
- Jeffrey K Garfinkle    bkgroup@buchalter.com, jgarfinkle@buchalter.com;lgoodwin@buchalter.com
- Fredric Glass    fglass@fairharborcapital.com
- Nancy S Goldenberg    nancy.goldenberg@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael J Heyman    michael.heyman@klgates.com
- Mark D Houle    mark.houle@pillsburylaw.com
- Jeff D Kahane    jkahane@duanemorris.com
- Andy Kong    Kong.Andy@ArentFox.com
- Rodger M Landau    rlandau@lgbfirm.com, kmoss@lgbfirm.com
- Matthew A Lesnick    matt@lesnicklaw.com
- Michael B Lubic    michael.lubic@klgates.com
- Frank F McGinn    ffm@bostonbusinesslaw.com
- Elissa Miller    emiller@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Ernie Zachary Park    ernie.park@bewleylaw.com
- Richard Park    Richard.Park@usdoj.gov
- Justin E Rawlins    jrawlins@winston.com, docketla@winston.com
- Jacqueline L Rodriguez    jlr@lnbrb.com
- Benjamin Seigel    bseigel@buchalter.com, IFS_filing@buchalter.com
- David B Shemano    dshemano@pwkllp.com
- Philip E Strok    pstrok@wgllp.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Howard J Weg    hweg@pwkllp.com
- Sharon Z Weiss    sharon.weiss@hro.com
- Joseph M Welch    jwelch@buchalter.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                         **F 9013-3.1**

| In re:<br>WESTCLIFF MEDICAL LABORATORIES, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER Lead Case No. 8:10-bk-16743-TA<br>Jointly Administered with Case No. 8:10-bk-16746-TA |
|---|---|

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **March 10, 2011**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

Via Overnight Mail Served on March 10, 2011
The Hon. Theodor C. Albert
United States Bankruptcy Court
411 West Fourth Street
Santa Ana, CA 92701

**All the attached lists were served by U.S. Mail – Served on March 9, 2011**

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2010, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **March 10, 2011** | Lourdes Cruz | */s/ Lourdes Cruz* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                          **F 9013-3.1**

In re Westcliff Medical Laboratories
In re BioLabs, Inc.
File No. 4367
RSN

Committee-RSN
Benjamin Seigel/Jeffrey Garfinkle NEF *
Buchalter Nemer
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457

Counsel for Health Net, Inc.-RSN
Pillsbury Winthrop Shaw Pittman LLP
Attn: Mark D. Houle, Esq. NEF *
650 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7122

RSN
Rita A. Woodard
Treasurer-Tax Collector
221 S. Mooney Blvd., Room 104-E
Visalia, CA 93291-4593

RSN
City and County of San Francisco
Treasurer/Tax Collector-Legal Section;
Attn Robert L. Fletcher, Jr.
P.O. Box 7426
San Francisco, CA 94120-7426

Counsel for ACE
Jeff Kahane NEF *
Duane Morris LLP
865 S. Figueroa Street, Suite 3100
Los Angeles, CA 90017-5450

Service by U.S. MAIL
or NEF if marked with *

Frank Cadigan
Nancy Goldenberg
Terry Biers
Office of the U.S. Trustee NEF *
411 West Fourth St. Suite 9041
Santa Ana, CA 92701

RSN
Los Angeles County Treasurer and Tax
Collector
P.O. Box 54110
Los Angeles, CA 90054-0110

RSN
Robert Brill, Of Counsel
Grant Callison, VP
Cambridge Healthcare Properties, Inc.
1717 Main Street, 59th Floor
Dallas, TX 75201

Counsel for Hologic, Inc. and Third Wave
Technologies
Jonathan Braverman
Baker, Braverman & Barbadoro P.C.
50 Braintree Hill Office Park, Suite 108
Braintree, MA 02184-8734

Debtors
Westcliff Medical Laboratories, Inc.
BioLabs, Inc.
c/o FTI Consulting
633 West Fifth Street, 16th Floor
Los Angeles, CA 90071

Counsel for LGSM Laguna Hills, LLC
Ronald K. Brown, Jr. NEF*
Law Offices of Ronald K. Brown, Jr.
901 Dove Street, Suite 120
Newport Beach, CA 92660

Steven A. Oldham, Sr. Staff Atty
State of CA, Dept. of Health Care
Services
Office of Legal Services-MS 0010
P.O. Box 997413
Sacramento, CA 95899-7413

RSN
Counsel to Creditor Google
Scott E. Blakeley/Johnny White
Blakeley & Blakeley
2 Park Plaza, Suite 400
Irvine, CA 92614

Counsel for ACE
Ron Oliner
Duane Morris LLP
Suite 2200
One Market Plaza, Spear Tower
San Francisco, CA 94105-1127